# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2014

Lyle W. Cayce
Clerk

No. 12-20513

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RASHEED BABATUNDE KAYODE,
also known as Babatunde Rasheed Kayode,
also known as Rasheed Babatunde Kayode,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DENNIS and ELROD, Circuit Judges.
JENNIFER WALKER ELROD, Circuit Judge:

Rasheed Babatunde Kayode was sentenced to 210 months' imprisonment after pleading guilty to mail fraud, aggravated identity theft, and unlawful procurement of naturalization. Kayode subsequently petitioned the district court to vacate his plea agreement pursuant to 28 U.S.C. § 2255, arguing that his counsel failed to warn him of the likely deportation consequences of his guilty plea. The district court granted the government's motion for summary judgment, and denied Kayode's § 2255 motion and certificate of appealability. Because Kayode has failed to show prejudice as a result of his counsel's failure

No. 12-20513

to advise him of the likely deportation consequences of his plea agreement, we AFFIRM the judgment of the district court.

## I.

Kayode became a naturalized citizen on June 21, 2006. On May 14, 2008, postal inspectors searched Kayode's home and seized more than 350 credit cards, numerous credit reports, several hundred letters, about 800 pre-approved credit card applications, bank statements, credit card statements, checkbooks, other mail meant for people other than Kayode, as well as social security numbers, dates of birth, and other personal identification information belonging to a large number of individuals. In addition, the postal inspectors discovered $63,000 in U.S. currency, an undetermined amount of foreign currency, and various forms of merchandise such as flat-screen television sets and laptop computers that appeared to have been purchased with fraudulent credit cards.

Kayode was indicted on June 11, 2008, in a forty-four count indictment that included twenty counts of mail fraud, twenty counts of bank fraud, one count of possession of stolen mail, one count of fraud with access devices, one count of aggravated identity theft, and one count of unlawful procurement of naturalization. On September 23, 2008, Kayode entered pleas of guilty to mail fraud (Count 1), aggravated identity theft (Count 43), and to unlawful procurement of naturalization (Count 44) pursuant to a plea agreement. In exchange for Kayode's guilty plea, the government agreed to dismiss the remaining charges in the indictment, to request a reduction for acceptance of responsibility, and not to request an upward departure.

The plea agreement that Kayode signed stated:

> On June 21, 2006, the defendant became a naturalized U.S. citizen. . . . On that date and on April 17, 2006, the defendant stated under oath that he had not knowingly committed any crime or offense for which he had not been arrested. This statement was

2

materially false because the defendant knew at the time he swore under oath that he had, in fact, committed the crimes of mail fraud, bank fraud, possession of stolen mail and fraud in connection with access devices. The defendant was therefore ineligible to be admitted to citizenship because he was unable to establish good moral character.

Kayode contends that he only learned of the deportation consequences of the plea agreement during his September 23, 2008, rearraignment hearing. Before accepting his guilty plea, the district court engaged in the following colloquy with Kayode. First, the district court said, "I'm going to mention also to you that there is a possibility, if convicted or found guilty of this count, there might be a loss of citizenship that was given to you through naturalization." When asked if he understood the "nature of the charges and the possible penalties pending against you," Kayode answered, "Yes, Your Honor." The district court then asked Kayode if he understood that if his citizenship was revoked that "conviction may lead to your deportation or exclusion from the country." Kayode responded, "Yes, sir."

Later during the same hearing the district court asked Kayode whether he intended to commit the acts described in the pre-sentencing investigation report (PSR) and Kayode responded, "No, sir." The district court then warned Kayode that he would have to go to trial on all forty-four counts if Kayode's answer conflicted with his plea agreement, and sent Kayode to meet with his attorney. After meeting with his attorney, Kayode told the district court that he intended to commit the acts described in the PSR and knew what he was doing at the time. The PSR itself says that "due to the offense of conviction, it appears the defendant is deportable and should be stripped of his naturalization." Kayode stated on the record at the hearing that he had read and understood the plea agreement. The district court then accepted Kayode's plea.

No. 12-20513

On April 15, 2009, Kayode moved to withdraw his guilty plea, alleging that he was "concerned" about the waiver of his right to appeal, that he had no recollection of the case or his discussions with counsel because of prescription medication he was taking for a health condition, and that he "want[ed] to take his case to trial and state his innocence." The district court reviewed each medication Kayode took and confirmed that none of the medications hampered his mental competence. The district court denied this motion and the case proceeded to sentencing.

The district court then sentenced Kayode to 210 months on Count 1, 120 months on Count 44 to run concurrently to Count 1, and 24 months on Count 43 to run consecutively to Count 1, for a total imprisonment of 234 months. The district court also ordered Kayode to pay a total restitution of $24,865.94 to three financial institutions. In a separate appeal, we vacated Kayode's conviction and sentence for Count 43, and remanded the matter for further proceedings. The district court entered an amended final judgment on January 14, 2011, and Kayode received a 210 month sentence for the remaining two counts.

Kayode then filed a motion under 28 U.S.C. § 2255 attacking his remaining convictions on numerous grounds, including an allegation that he received ineffective assistance of counsel because his attorneys failed to advise him of the deportation consequences of his guilty plea. Kayode submitted an affidavit, asserting that he was under the impression that he had given up his right to trial by the time the district court warned him about the possible deportation consequences of his plea, because he had already signed the plea agreement. Kayode's affidavit does not state that he would have gone to trial if he had known of the possible deportation consequences of his plea. It does, however, state that "[i]f I had known my indictment would have been dismissed, I would never have pled guilty."

4

No. 12-20513

The government filed a motion for summary judgment, seeking to enforce the appeal waiver in Kayode's plea agreement. The district court granted the government's motion for summary judgment and denied Kayode's § 2255 motion. The district court determined that Kayode's appeal waiver was knowing and voluntary and was therefore enforceable. The district court noted that the waiver did not bar his ineffective assistance of counsel claim, but instead dismissed that claim after determining that Kayode had not met the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In concluding that Kayode could not establish prejudice, the district court considered: (1) the district court's admonishments during the plea colloquy regarding deportation; (2) the overwhelming evidence of guilt against Kayode; and (3) the ability of the government to seek revocation of his citizenship even if Kayode insisted on proceeding to trial and was acquitted of all counts.

The district court denied Kayode's certificate of appealability (COA). We subsequently granted a COA only on the issue of whether counsel rendered ineffective assistance by failing to inform Kayode of the deportation consequences associated with his guilty plea. We denied his motion for a COA in all other respects.

## II.

Our review "is limited to the issues enumerated in the COA." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (citing 28 U.S.C. §2253(c)(1)). In reviewing a district court's denial of a § 2255 motion, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008).

## III.

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court held that counsel's failure to advise a lawful permanent resident alien of likely deportation implicates the Sixth Amendment right to effective assistance of

5

No. 12-20513

counsel, as set forth in *Strickland*, 466 U.S. 668.  Both parties agree that *Padilla* applies here because Kayode's conviction became final after *Padilla* was decided, as his appeal was still pending when the decision was issued.

In order to obtain relief, Kayode must show both (1) that his counsel's performance was deficient, and (2) prejudice.  *Strickland*, 466 U.S. at 687.

A.

To show that his attorney's performance was deficient, Kayode must show that the attorney's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment."  *Id.*

In *Padilla*, the Supreme Court determined that the defendant's counsel was deficient for failing to "advise her client regarding the risk of deportation." 559 U.S. at 367, 369.  The decision was underscored by the Supreme Court's recognition of the unique role that deportation can play in criminal punishment.  *Id.* at 373.  As the Supreme Court explained, "informed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process.  By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties."  *Id.*  Given the unique and extreme consequence of deportation, it is incumbent on counsel to warn their clients when a guilty plea could have such an impact.  *Id.* ("The severity of deportation—the equivalent of banishment or exile—only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." (internal quotation marks and citations omitted)).  It has now been more than three years since the Supreme Court issued *Padilla*, and defense counsel should be well aware of its clear

6

No. 12-20513

requirement that clients be warned of deportation risks.  As the Supreme Court recently noted:

> The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages.

*Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012).

Here, Kayode averred in a sworn affidavit that his attorneys never warned him prior to his sentencing hearing that he could lose his citizenship if he pleaded guilty to Count 44, and never indicated that Kayode might be deported.  Kayode also stated that his attorneys did not review his plea agreement with him.  According to Kayode, he told his attorney that he wanted to go to trial and never agreed to plead guilty.  Kayode further stated that he did not read the plea agreement before signing it on September 23, 2008, and that his attorneys did not review it with him.  Kayode has thus submitted sufficient evidence to create a genuine issue of material fact as to whether his counsel's assistance was constitutionally deficient under the first prong of *Strickland.  See Padilla*, 559 U.S. at 369 ("[W]hen the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear.  Accepting his allegations as true, Padilla has sufficiently alleged constitutional deficiency to satisfy the first prong of *Strickland*.").

### B.

We now turn to the second prong of *Strickland*.  Nearly twenty-five years before *Padilla* was decided, the Supreme Court explained in *Hill v. Lockhart*, that in the plea context, the "prejudice" prong of the *Strickland* test for ineffective assistance of counsel requires that the defendant show "that there is a reasonable probability that but for counsel's errors, he would not have

pleaded guilty and would have insisted on going to trial." 474 U.S. 52, 59 (1985).

> With regard to the prejudice prong, a defendant must "affirmatively prove" prejudice. *Strickland*, 466 U.S. at 693. A mere allegation of prejudice is not sufficient to satisfy the prejudice prong of the *Strickland* test. A petitioner must establish that but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial. *Carter v. Collins*, 918 F.2d 1198, 1200 (5th Cir. 1990).
>
> This assessment, in turn, will depend in part on a prediction of what the outcome of a trial might have been. *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985). For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. That assessment, in turn, will depend in large part on a prediction of whether the evidence likely would have changed the outcome of a trial.

*Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

The Supreme Court has recognized that in some contexts it is also possible to demonstrate prejudice even absent a showing that a trial would have likely resulted in a different outcome. *See, e.g., Lafler v. Cooper*, 132 S. Ct. 1376, 1385 (2012) ("Having to stand trial, not choosing to waive it, is the prejudice alleged. In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed"); *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) ("To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must

demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."); *Glover v. United States*, 531 U.S. 198, 203 (2001) ("Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our jurisprudence suggests that any amount of actual jail time has Sixth Amendment significance.").

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. 372. In order to do so, Kayode "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.*[1] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding, if the error had no effect on the judgment." *Hill*, 474 U.S. at 69 (citing *Strickland*, 466 U.S. at 691).

Here, Kayode has not met his burden to show prejudice. In assessing prejudice, we consider the totality of the circumstances, including Kayode's evidence to support his assertion, his likelihood of success at trial, the risks Kayode would have faced at trial, Kayode's representations about his desire to retract his plea, his connections to the United States, and the district court's admonishments.[2] Given the facts here, we agree with the district court that Kaydode has not demonstrated prejudice.

---

[1] In *Padilla* the Supreme Court did not reach the question of whether the defendant had demonstrated prejudice and instead remanded for the prejudice determination. *Id.* at 374.

[2] We note that the factors we consider here are not the only factors that may be considered under the prejudice analysis. While we discuss the factors most relevant to this case, this list of factors is not intended to be exhaustive.

We consider a number of factors when determining whether, under the totality of the circumstances, a defendant has established prejudice under *Strickland*. Kayode argues that he was prejudiced because he would have proceeded to trial if he had known of the likely immigration consequences of his plea.[3] We therefore begin by considering whether the defendant put forth evidence to support his assertion that he would have proceeded to trial if he had known of the likely immigration consequences of his plea. Kayode did not.[4] While Kayode makes a number of sworn statements about his counsel's actions in his affidavit, he does not aver that he would have gone to trial had he known of the immigration consequences of his plea. Instead, his affidavit states that

---

[3] As discussed above, the Supreme Court has recognized that in certain circumstances it is possible to show prejudice even absent a showing that a trial would have likely resulted in a different outcome. However, Kayode does not raise any such arguments here. As a result, we limit our analysis to whether he was prejudiced by not proceeding to trial.

[4] The dissenting opinion contends that there is a factual dispute as to whether Kayode would have proceeded to trial had he known of the likely immigration consequences of his plea. This is baffling. First, Kayode never briefed the evidentiary-hearing issue, either in his motion for COA or in his brief on appeal. Second, and more importantly, the dissenting opinion does not identify what could possibly be gleaned from an evidentiary hearing. Kayode's affidavit, on its face, never states that Kayode would have gone to trial had his attorney informed him of the likely immigration consequences of his guilty plea. The affidavit does not specify *any* different course of action that Kayode would have taken had he known that he might lose his United States citizenship and be deported. Instead, the affidavit asserts that Kayode was a minor participant in his crimes, avers that his attorney pressured him through incorrect legal advice to sign the plea agreement without reading it, and avers that Kayode first learned of the possible immigration consequences from the district court at his rearraignment hearing. While Kayode averred in his affidavit that he would not have pleaded guilty had he "known [his] indictment would have been dismissed," and his attorney did not quickly act on his instruction to file a motion to withdraw the plea, Kayode never averred that he would have proceeded to trial had he known of the likely immigration consequences of pleading guilty. As a matter of procedure, one cannot create a fact issue by stating new facts for the first time in an appellate brief. *Smith v. Olin Chem. Corp.*, 555 F.2d 1283, 1285 (5th Cir. 1977) (en banc). This glaring omission in Kayode's affidavit alone would likely justify affirmance. *Cf. Armstead*, 37 F.3d at 206 (mere allegation that defendant would have insisted on a trial is by itself insufficient). In any event, the undisputed facts conclusively establish that Kayode is not entitled to relief.

"[i]f I had known my indictment would have been dismissed, I would never have pled guilty."[5] As a result, this factor weighs against finding prejudice.

Another important factor is whether the defendant has demonstrated that he was likely to succeed at trial. *See Armstead*, 37 F.3d at 206. Here, Kayode has not done so. The district court found that there was "overwhelming evidence against Kayode." This finding is entitled to great deference. *Urias–Marrufo*, 744 F.3d at 369. Specifically, there was evidence that Kayode received stolen mail belonging to more than 250 people, and that he defrauded at least 98 financial institutions. Postal inspectors seized more than 350 credit cards issued in names other than his own, numerous credit reports containing the names, social security numbers, and dates of birth and other personal identification information belonging to a large number of individuals, as well as several hundred letters, about 800 pre-approved credit card applications, bank statements, credit card statements, checkbooks, and other mail meant for third parties. The issue dates for these items went as far back as November 21, 1997—almost a decade before Kayode became a naturalized citizen. The inspectors also found $63,000 in U.S. currency, an undetermined amount of foreign currency, and various forms of merchandise such as flat-screen television sets and laptop computers that appeared to have been purchased with fraudulent credit cards.

Kayode's apparent defense to these charges was that the checkbooks, mail, and other materials belonged to someone else and that he was only "a minor participant in the events of which [he had] been accused. So minor, [he was] not sure that [his] role would even have deemed indictment or prison

---

[5] In contrast, the defendant in *United States v. Urias–Marrufo,* submitted an affidavit stating that "if she had known for sure that she would be deported as a result, she would not have entered the guilty plea." 744 F.3d 361, 363 (5th Cir. 2014). There, we determined that the defendant had sufficiently presented a *Padilla* claim in a motion to withdraw a plea, and remanded to the district court to consider her claim. *Id.* at 369.

time." Other than his own sworn testimony, Kayode does not point to any additional evidence that would support his defense. Based on this record, Kayode has not shown that he was likely to succeed at trial, and this factor thus weighs against finding prejudice.

In assessing whether a reasonable defendant would have rationally chosen to go to trial under the circumstances, we also consider the risks faced by a defendant in selecting a trial rather than a plea bargain. *Cf. Padilla*, 559 U.S. 372. By going to trial, Kayode faced convictions on all forty-four counts and a much higher sentence. As the district court explained, if Kayode had

> rejected the plea agreement and proceeded to trial, he would have faced substantially more time in prison. He was charged with forty-four counts, and his plea agreement allowed him to plead guilty to three, while the Government agreed to dismiss the other forty-one. To avoid deportation, Kayode would have had to receive an acquittal on all counts occurring prior to and during his application for citizenship. Otherwise, he still would have violated § 1425 by lying in his citizenship application and asserting that he had not knowingly committed any crimes. While acquittal was possible in theory, it was improbable in this case, given the Government's overwhelming evidence against Kayode.

Given that there were documents found in his home from as far back as 1997, and that the PSR indicated that the scheme to commit these crimes began in 2000, we agree with the district court that Kayode was unlikely to be acquitted of all counts for conduct that occurred prior to his naturalization in 2006. *See Sandoval–Moschetto,* Nos. EP-11-CV-199-KP, EP-09-CR-89291-KC, 2013 WL 321767, at *11 (W.D. Tex. Jan. 25, 2013) (unpublished) (no prejudice when "the evidence in this case was so overwhelming that Sandoval would have likely been inclined to accept the plea regardless of immigration consequences"); *Zapata–Banda v. United States,* No. B:10-256, 2011 WL 1113586, at *10 (S.D. Tex. Mar. 7, 2011) (unpublished) (finding that overwhelming evidence and lack of a viable defense indicate, in part, that a

petitioner would have pleaded guilty even if advised of immigration consequences). It is thus unlikely that a rational person in Kayode's position would have proceeded to trial. Accordingly, this factor weighs against a finding of prejudice.

Next, we consider the defendant's connections to the United States. Significant ties to the United States could make a rational defendant less likely to accept a plea agreement that would result in deportation, and more likely to risk trial, in hopes of avoiding certain "exile" from the United States. *Cf. Padilla*, 559 U.S. at 370–71 ("When attorneys know that their clients face possible exile from this country and separation from their families, they should not be encouraged to say nothing at all."); *United States v. Akinsade*, 686 F.3d 248, 255–56 (4th Cir. 2012) ("We have found prejudice where the defendant, whose counsel misinformed him of deportation consequences, had significant familial ties to the United States and thus would reasonably risk going to trial instead of pleading guilty and facing certain deportation."). Here, the PSR indicates that three of Kayode's five siblings live in the United States, and that Kayode has a young child residing in Houston, Texas. Kayode has consistently resided in Houston, Texas, since his entry into the United States in 1982. While these facts, standing alone, do not establish prejudice, they do indicate that it would be more reasonable for someone in Kayode's circumstances to risk going to trial rather than face deportation. This factor thus weighs in favor of finding prejudice.

Another factor in our analysis is whether the defendant previously moved to withdraw his guilty plea. *See Gonzalez v. United States*, 722 F.3d 118, 132–33 (2d Cir. 2013).[6]  Prior to sentencing, Kayode moved to withdraw

---

[6] In *Gonzalez,* the petitioner amended his initial habeas petition after *Padilla* was issued, asserting that his counsel failed to provide effective assistance by neglecting to advise

his plea, asserting concern regarding his appeal waiver and alleging he had no recollection of the proceedings or his discussions with counsel. Although Kayode's motion to withdraw his guilty plea was not based on counsel's deficiencies under *Padilla*, the fact that he sought to withdraw his plea and asserted his interest to go to trial, proclaiming innocence, is nonetheless relevant to the prejudice analysis.[7] *Gonzalez*, 722 F.3d at 133. As the Second Circuit explained, although the motion to withdraw his guilty plea had nothing to do with counsel's performance, the motion is still relevant to Kayode's ability to demonstrate that a rational defendant in his circumstances would have rejected the plea agreement and proceeded to trial, and thus should be a factor in the court's prejudice inquiry.

> In the present case, the stated basis of [the petitioner's] request to withdraw his plea was not related to any performance or lack thereof by [counsel] . . . . [Accordingly, t]he fact that an attempt was made to withdraw the guilty plea and go to trial may not be dispositive on the issue of IAC prejudice; however, *it is a factor that must be considered by the court in assessing whether there is a reasonable probability that but for substandard performance by counsel, the defendant would have chosen to eschew the plea and go to trial.* Given that [the petitioner's] attempt to withdraw his plea and go to trial does not appear to have been considered by the

---

him of the immigration consequences of his plea. Without consideration of the fact that Gonzalez had unsuccessfully sought to withdraw his plea, the district court considered Gonzalez's *Padilla* claim (in addition to other ineffective-assistance-of-counsel claims) and found that Gonzalez could not establish prejudice because of the overwhelming evidence of guilt against him. After the district court denied Gonzalez's habeas petition, and during the pendency of his appeal to the Second Circuit, the Supreme Court issued its decision in *Chaidez,* holding that *Padilla* does not apply retroactively on collateral appeal. *Chaidez v. United States*, 133 S. Ct. 1103 (2013). Thus, the Second Circuit found that it could not consider Gonzalez's *Padilla* claim. The Second Circuit, however, analyzed the district court's reasoning under *Strickland* and concluded that it "did not endorse" the district court's prejudice analysis because it failed to consider the relevant fact that Gonzalez had sought to withdraw his guilty plea. *See Gonzalez*, 722 F.3d at 132–33.

[7] *Padilla* had not yet been decided at the time that Kayode filed his motion to withdraw his plea, and Kayode did not argue in his motion that his counsel had been ineffective in assisting him with the plea.

14

district court in assessing the reasonable probability that he would have chosen to go to trial but for [counsel's] allegedly substandard performance, we decline to endorse the district court's conclusion that [the petitioner] failed to make the requisite showing of prejudice.

*Id.* at 132–33 (emphasis added). Just as in *Gonzalez,* here Kayode unsuccessfully moved to withdraw his guilty plea.

Finally, we also consider whether the defendant received any judicial admonishments regarding the possible deportation consequences of a plea when evaluating prejudice. As we have previously noted, a district court's admonishments are "irrelevant" in determining whether error has occurred under the first *Strickland* prong:

> *Padilla*, which announced a new, clearly defined, and relatively limited duty for criminal defense attorneys, concerns a narrow factual inquiry compared to most *Strickland* claims: whether the defendant was informed *by defendant's counsel* of *certain* immigration consequences, and whether prejudice resulted therefrom. It is counsel's duty, not the court's, to warn of certain immigration consequences, and counsel's failure cannot be saved by a plea colloquy.

*Urias–Marrufo*, 744 F.3d at 369. Warnings from a judge during a plea colloquy are not a substitute for effective assistance of counsel, and therefore have no bearing on the first *Strickland* prong. However, while judicial admonishments are not a substitute for effective assistance of counsel, they are relevant under the second *Strickland* prong in determining whether a defendant was prejudiced by counsel's error.

The admonishments here weigh against finding prejudice.[8] Before accepting his plea, the district court informed Kayode "that there is a

---

[8] The dissent characterizes the admonishments in this case as merely "perfunctory," but the record demonstrates that the district court did far more than read from a script. Rather, the experienced district court actively ensured that Kayode received the information

possibility, if convicted or found guilty of this count, there might be a loss of citizenship that was given to you through naturalization." The district court also asked Kayode if he understood that if his citizenship was revoked that "conviction may lead to your deportation or exclusion from the country" before accepting his plea. Kayode responded, "Yes, sir." The district court also noted that "during Kayode's rearraignment, and prior to his plea of guilty, the Court asked him *three* times if he understood that he could face deportation as a result of pleading guilty, and Kayode stated on the record each time that he understood that consequence." Such "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). This factor thus weighs against finding prejudice. We need not decide today whether Kayode's affirmative responses to these admonishments, standing alone, would be sufficient to defeat the prejudice prong under *Strickland*.[9]

---

that he needed to enter an informed guilty plea. Not only did the district court, on its own initiative, inquire whether Kayode was a naturalized citizen and choose to make the loss-of-citizenship admonishments over counsel's assertion that they were unnecessary, but the district court also later stopped the hearing when Kayode testified that he did not intend to commit the acts described in the PSR. The district court then allowed Kayode to meet with his attorney before resuming the rearraignment hearing and clarified, on the record, that Kayode and his attorney had time to meet and discuss the issue before the hearing resumed. The district court's choice, on its own initiative, to include the loss-of-citizenship admonishments, the district court's active role during the rearraignment hearing, and Kayode's opportunity to confer with his attorney after the loss-of-citizenship admonishments were made, belie any assertion that the admonishments were merely "perfunctory." Thus, we properly accord weight to the admonishments in this case.

[9] Given the fact-intensive nature of the prejudice analysis, courts have varied in the significance that they attribute to judicial admonishments when assessing this second prong of the *Strickland* test. *Compare DeVille v. Whitley*, 21 F.3d 654, 660 (5th Cir. 1994) ("court's admonishment cured any deficiency in counsel's performance and made the error harmless" when the court, but not counsel, admonished the defendant that he was waiving his right to a suppression hearing); *Abraham v. United States*, 699 F.3d 1050, 1053 (8th Cir. 2012) ("[A] defendant cannot satisfy *Strickland*'s prejudice prong when 'the PSR indicated a likelihood that [the defendant] would be deported if convicted; [the defendant] confirmed that he had read the PSR, discussed it with his counsel, and understood it; and [the defendant] never moved to withdraw his guilty plea.'") *with Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th

No. 12-20513

Under the totality of the circumstances present here, Kayode has not affirmatively demonstrated prejudice, and has thus failed to surmount *Strickland*'s high bar. *Padilla*, 559 U.S. at 372.

## IV.

Kayode's claim fails as he has not shown that he was prejudiced by the fact that his counsel did not warn him of the likely deportation consequences of his plea agreement. *See Strickland*, 466 U.S. at 687 ("Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."). We therefore AFFIRM the district court's grant of summary judgment.

---

Cir. 1986) (counsel's failure harmless when defendant received judicial admonishments and there was also evidence that defendant was unlikely to succeed at trial); *Sandoval–Moschetto*, 2013 WL 321767, at \*4 (treating judicial admonishments as one factor in prejudice analysis). The approach we adopt today allows courts to have the continued freedom to consider all relevant factors in assessing prejudice.

17

No. 12-20513

JAMES L. DENNIS, Circuit Judge, dissenting:

Rasheed Babatunde Kayode, a federal prisoner, moved under 28 USC § 2255 to vacate his sentence alleging, *inter alia*, that his retained defense attorney provided ineffective assistance of counsel under *Padilla v. Kentucky*, 559 U.S. 356 (2010). The district court denied his motion and granted the Government's motion to dismiss without an evidentiary hearing. Section 2255(b) of Title 28, in pertinent part, provides: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." The majority affirms the district court's denial of Kayode's § 2255 petition without determining whether the motion and the files and records of the case "conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C § 2255(b). Because the motion, files and records of this case do not conclusively, or undoubtedly, show that Kayode is entitled to no relief, I respectfully dissent. In my view, this court should vacate the district court's order and remand the case for further proceedings, including an evidentiary hearing.

Additionally, I disagree with the majority's conclusion that the vague and indeterminate judicial admonishment provided to Kayode during his guilty plea proceeding, moments before he pleaded guilty, weighs against a finding of prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984). In most cases, including the present one, in which the judge merely adds a perfunctory,[1] general warning of possible adverse immigration consequences

---

[1] The majority suggests that by describing the judicial admonishment here as "perfunctory" I erroneously characterize the district court's admonishment as nothing more than a recitation from a script. That is not so. Rather, the district court's admonishment

near the end of the defendant's guilty plea colloquy, that judicial warning cannot excuse, eliminate, or diminish any prejudice that may have been caused defendant by the ineffective assistance of his counsel leading up to his guilty plea. Such a perfunctory judicial warning, coming only after the defendant has taken all but the final prejudicial step toward his conviction, affords such a defendant no genuine protection against his counsel's wrongful acts or omissions, and therefore does not offset or weigh against the prejudice caused the defendant by the derelictions of his counsel.

## I.    Right to an Evidentiary Hearing

As the case is presented to us today, the proper question is not the ultimate merits of Kayode's claim of ineffective-assistance-of-counsel but, rather, whether the district court erred in denying the claim without granting an evidentiary hearing. We review the district court's decision for an abuse of discretion. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).

### A.

Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct his sentence. 28

---

here, like most judicial admonishments during guilty plea proceedings, was "perfunctory" because it was part of the court's routine duty and by its very nature, provided only a superficial warning that contained none of the meaningful advice, guidance, or counsel that a defense attorney is required to provide to his client. *See Perfunctory Definition*, MERRIAM-WEBSTER.COM, http://www.merriam-webster.com/dictionary/perfunctory (last visited Dec. 22, 2014) (defining "perfunctory" as "characterized by routine or superficiality"); *see also Perfunctory Definition*, OED: OXFORD ENGLISH DICTIONARY, http://www.oed.com/view/Entry/140818 (last visited Dec. 22, 2014) (defining "perfunctory" as, *inter alia*, "superficial" or "done merely as a matter of duty"). A judge fulfills his duty at the guilty plea proceeding by providing a general, vague, and equivocal warning that deportation is a potential consequence of a guilty plea. *See* Fed. R. Crim. P. 11 advisory committee's note (2013 Amendments, Subdivision (b)(1)(O)) (explaining that a court must provide "a generic warning, not specific advice concerning the defendant's individual situation."). This is of course not the kind of advice and advocacy that is required of counsel under the Sixth Amendment, and thus is a "perfunctory," or superficial warning regarding the adverse consequence of Kayode's loss of citizenship and exposure to deportation.

U.S.C. § 2255(a).  Once a petitioner files a § 2255 motion, the district court is required by statute to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *Dupart v. United States*, 541 F.2d 1148, 1149 (5th Cir. 1976) (per curiam).  As this court has explained,

> Application of this statutory command . . . demands a two-step inquiry:
>
> (1) Does the record in the case, as supplemented by the Trial Judge's "personal knowledge or recollection," conclusively negate the factual predicates asserted in support of the motion for post-conviction relief?
>
> (2) Would the petitioner be entitled to post-conviction relief as a legal matter if those factual allegations which are not conclusively refuted by the record and matters within the Trial Judge's personal knowledge or recollection are in fact true?
>
> If the answer to the first inquiry is a negative one and the answer to the second inquiry an affirmative one, then s 2255 requires the District Court to conduct an evidentiary hearing on those factual allegations which, if found to be true, would entitle the petitioner to post-conviction relief.

*Friedman v. United States*, 588 F.2d 1010, 1015 (5th Cir. 1979) (footnote omitted).  Thus, a district court abuses its discretion by denying an evidentiary hearing if the motion sets forth specific, controverted issues of facts that are not conclusively negated by the record and that, if proved at the hearing, would entitle the petitioner to any relief.  *See, e.g., Mack v. Smith*, 659 F.2d 23, 25 (5th Cir. 1981) ("[W]here [the petitioner] would be entitled to post-conviction relief if his factual allegations were proven true, s 2255 requires an evidentiary hearing on those allegations.") (citing *Friedman*, 588 F.2d 1010, approvingly); *see also United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir.) *cert. denied*, 134 S. Ct. 629 (2013) ("[W]here a defendant raises a colorable and previously unexplored ineffective assistance claim on appeal, we remand for further

district court proceedings unless the record alone conclusively shows that the defendant either is or is not entitled to relief.") (internal quotation marks omitted); *Winthrop-Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) ("[A] petitioner need only allege—not prove—reasonably specific, non-conclusory facts that, if true, would entitle him to relief.") (quotation marks and citation omitted).

Further, "[c]ontested fact issues in § 2255 cases must be decided on the basis of evidentiary hearings." *Reagor v. United States*, 488 F.2d 515, 517 (5th Cir. 1973). As the Supreme Court has explained, even if the Government contends that the petitioner's allegations are "improbable and unbelievable," if the petitioner makes specific and detailed assertions in his motion and affidavit that create contested issue of fact that, if true, entitle him to relief, an evidentiary hearing is warranted. *Machibroda v. United States*, 368 U.S. 487, 494 (1962); *see also Fontaine v. United States*, 411 U.S. 213, 214-15 (1973) (vacating and remanding for an evidentiary hearing where the petitioner's motion for "relief under s 2255 sets out detailed factual allegations" that, if true, would support his contention that his "confession, his waiver of counsel, and the uncounseled plea of guilty" were all coerced); *Blackledge v. Allison*, 431 U.S. 63, 75 (1977) (explaining that "[i]n administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant's representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment," and remanding because the "record of the plea hearing did not, in view of the

No. 12-20513

allegations made, conclusively show that the prisoner (was) entitled to no relief") (footnote and internal citations omitted).[2]

## B.

Ineffective-assistance-of-counsel claims under the Sixth Amendment require that the petitioner demonstrate (1) that counsel provided deficient representation, and (2) that the petitioner was prejudiced by his attorney's deficiencies. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Prejudice must be determined by inquiring whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

---

[2] To demonstrate that the district court abused its discretion in denying a claim without an evidentiary hearing, this court has, depending on the facts and circumstances of the case, sometimes required that a petitioner present "independent indicia of the likely merit of [his] allegation." *See, e.g.*, *United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008). "However, this requirement must be understood practically, in the context of the claim being presented," *Reed*, 719 F.3d at 373, and is inapplicable to this case.

The requirement of "independent indicia" was first articulated by the panel in *United States v. Raetzsch*, and is, as I see it, properly limited to cases with analogous facts; for example, where the petitioner's allegations are directly refuted by his prior testimony and "inconsistent with the bulk of his conduct to date." 781 F.2d 1149, 1151 (5th Cir. 1986). In *Raetzsch,* this court was faced with a claim that the petitioner's guilty plea was involuntary because it was induced by an "unkept plea bargain," yet this allegation directly refuted the petitioner's testimony (albeit unsworn) at the plea hearing. *Id.* at 1150. The vast majority of case law that cites this proposition likewise involves cases in which the petitioner makes claims of an unkept promise that is "directly refuted" by their prior sworn testimony. *See, e.g.*, *United States v. Cervantes*, 132 F.3d 1106, 1111 (1998) (reasoning that where petitioner's claims of an unkept promise directly refuted her sworn testimony that she had "not been induced to sign the agreement by any promises, representations or coercion," she may nonetheless be granted an evidentiary hearing "if [she] produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties"); *see also Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989) (likewise requiring "independent indicia of the likely merit of [the petitioner's] contentions" when the petitioner's claim was based on an alleged promise that was "inconsistent with representations made in open court"). A requirement of "independent indicia" beyond the petitioner's sworn affidavit is thus appropriate where such allegations are otherwise negated by the record, and should not be applied across the board to every habeas petitioner's claims and particularly not here, when the *pro se*, indigent and incarcerated petitioner submits a sworn affidavit with detailed and specific factual allegations that are not "directly refuted" or rebutted by his prior testimony. *Machiabroda*, 368 U.S. at 494.

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In *Padilla,* the Court broke new ground[3] in holding that defense counsel's failure to advise his client of immigration consequences of his guilty plea amounts to a violation of the criminal defendant's Sixth Amendment right to effective assistance of counsel. 559 U.S. at 375. Applying the *Strickland* two-pronged test, the Court concluded that Padilla's counsel's failure to advise him that a guilty plea would result in his removal from the country amounted to deficient representation under *Strickland. Id.* at 369. The Court then remanded the case for a determination of whether Padilla was prejudiced by counsel's errors and, thus, whether he was entitled to relief. *Id.* at 360. The Court explained that to show prejudice in this context, Padilla must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372.

Kayode alleges that his defense attorney violated his Sixth Amendment right to effective assistance of counsel by ignoring his requests to proceed to trial, coercively directing him to sign the plea agreement and berating him to enter a guilty plea all without ever advising him that, as a result, he would lose his citizenship and be deported. He further alleges that, but for counsel's errors, he would have rejected the plea deal and proceeded to trial. The majority, although acknowledging that there are genuine disputes of fact regarding counsel's deficiency, concludes that Kayode has not established that he was prejudiced by counsel's deficient representation. However, neither the district court nor the majority, before concluding that Kayode failed to demonstrate prejudice, actually examined the motion, files and records of this

---

[3] *Chaidez v. United States,* 133 S. Ct. 1103, 1111 (2013) ("It was *Padilla* that first . . . made the *Strickland* test operative[] when a criminal lawyer gives (or fails to give) advice about immigration consequences").

case to determine whether they "conclusively" showed that Kayode was not entitled to relief—thereby ignoring the dictates of Section 2255(b) and denying Kayode his right to develop the factual basis for his claims. While Kayode may have significant hurdles to overcome to prove that his counsel's deficiency prejudiced him, I cannot agree that the limited record here conclusively shows that Kayode was not prejudiced by counsel's deficiencies. Rather, his specific factual allegations averred in his sworn affidavit are not negated by the record and, if proven true, "might support a constitutional claim of ineffective assistance of counsel." *See Friedman*, 588 F.2d at 1017. Accordingly, I would reverse and remand for "as full a hearing as is necessary" *id.*, so that the district court may develop the record, resolve contested fact issues, and reconsider its prejudice analysis in light of the findings of fact that impact the ultimate legal conclusions necessary to determine whether Kayode is entitled to relief.[4]

**1.**

The record in the case does not "conclusively negate the factual predicates asserted in support of the motion for post-conviction relief." *See Friedman*, 588 F.2d at 1015. Construing Kayode's *pro se* affidavit liberally, as

---

[4] While, on this record, the contested issues of fact appear to warrant a full evidentiary hearing, if remanded, the district court would have the discretion to determine whether a full evidentiary hearing with live testimony is indeed warranted, or whether some other proceeding would suffice to develop the record and resolve contested issues of fact, such as discovery proceedings or obtaining affidavits from counsel and other relevant witnesses. *See, e.g., Blackledge v. Allison*, 431 U.S. 63, 82-83 (1977) ("[I]t may turn out upon remand that a full evidentiary hearing is not required. But [the petitioner] is entitled to careful consideration and plenary processing of (his claim,) including full opportunity for presentation of the relevant facts") (internal quotation marks and footnote omitted); *Friedman v. United States*, 588 F.2d 1010, 1017 (5th Cir. 1979) (vacating and remanding "for reconsideration of the petition after as full a hearing as is necessary to decide all of these unresolved factual allegations which, if true, might support a constitutional claim of ineffective assistance of counsel.").

we must,[5] he has alleged, *inter alia*, that counsel: dismissed his requests to enter a not-guilty plea and proceed to trial; presented him with the written plea agreement for the first time in the district court, just moments before the guilty plea proceeding; failed to explain the contents of the written plea agreement nor allow him an opportunity to read it before insisting that he sign it; never explained to him that he would lose his citizenship and be deported if he pleaded guilty under the plea agreement; misadvised him that the plea agreement, once signed, was irrevocably binding and that the judge would vindictively punish him by imposing a harsher sentence if he did not go through with the plea agreement. Indeed, the majority agrees that these allegations are sufficient to create a genuine dispute of material fact regarding counsel's deficiency under *Padilla* and *Strickland. Ante*, at 7.

In addition to the allegations regarding Kayode's counsel's deficiencies, he further contends that as a result of counsel's failures, he signed the plea agreement before the plea colloquy without so much as reading it or understanding the consequences of entering his guilty plea and, had he been provided with effective counsel who would have properly advised him that he would lose his citizenship and be removed from this country as a result of his guilty plea, he would have rejected the plea deal and proceeded to trial. Further, Kayode avers that he had a minor role in the fraudulent scheme and

---

[5] *See, e.g.*, *McNeil v. United* States, 508 U.S. 106, 113 (1993) (acknowledging that the Supreme Court has "insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed") (citing *Haines v. Kerner*, 404 U.S. 519 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). *See also Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) ("The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction."); *Johnson v. Quarterman*, 479 F.3d 358, 359 (5th Cir. 2007) ("Briefs by *pro se* litigants are afforded liberal construction . . . ."); *Melancon v. Kaylo*, 259 F.3d 401, 407 (5th Cir. 2001) (reasoning that the *pro se* habeas petitioner's argument that he should not be punished for the improper setting of the return date should be construed as a request for equitable tolling, despite his failure to "explicitly raise the issue of equitable tolling").

that the inculpatory evidence seized from his residence actually belonged to a "fellow Nigerian." In his brief on appeal, Kayode also notes the results of a latent fingerprint examination of the stolen mail recovered from his home, which purportedly revealed the fingerprints of at least six identifiable individuals. There is no indication of whether or not Kayode's fingerprints were found on the stolen mail.

Kayode's claims regarding his minor role in the fraud and his insistence that he would have proceeded to trial but for counsel's deficient representation are not conclusively negated by the record, but the majority concludes that Kayode's petition was properly denied without an evidentiary hearing. The majority erred in not addressing the first question presented by a § 2255 case in which the district court has denied relief without an evidentiary hearing, *viz.*, whether the motion and the files and records of the case "conclusively show" that the prisoner is entitled to no relief. The majority seemingly reasons, after considering various factors, that Kayode is foreclosed from demonstrating prejudice because: (1) he did not put forth evidence to support his assertion that, but for counsel's errors, he would have proceeded to trial; (2) he was unlikely to succeed at trial; (3) because he was unlikely to be acquitted and faced less prison time as a result of the plea agreement, he did not demonstrate that a rational person would have rejected the plea and proceeded to trial; and (4) he was admonished by the judge that he may lose his citizenship and may be removed from the country.[6]

In affirming summary judgment for the Government, the majority, like the district court, improperly disregards contested fact issues without the benefit of an evidentiary hearing to conclude that Kayode cannot establish he was prejudiced by counsel's deficient representation. First, as noted, Kayode

---

[6] I will address my views on the judicial admonishment factor in section II, *infra.*

26

asserted via sworn affidavit that his attorney never told him he would lose his citizenship before signing the plea agreement and that, based on communications with his attorney, he thought that by signing the plea agreement he had irrevocably "given up his right to trial." He averred that in pre-plea meetings with counsel he rejected the first proposed plea agreement and told counsel he wanted to go to trial. Kayode additionally contended that during off-the-record discussions with counsel during rearraignment, he again asked if he could go to trial, but counsel informed him that he had already signed the plea agreement so he had "no choice but to plead guilty." The majority considers this affidavit and concludes that, "[w]hile Kayode makes a number of sworn statements about his counsel's actions in his affidavit, he does not aver that he would have gone to trial had he known of the immigration consequences of his plea." *Ante*, at 10. Despite Kayode's assertions, the majority erroneously disregards Kayode's averment that he told his attorney he wanted to go to trial, and faults him for failing to expressly articulate in one clear statement that, but for counsel's failure to inform him of the immigration consequences of his plea, he would have rejected the plea and insisted on proceeding to trial. Construing Kayode's *pro se* affidavit liberally, in accordance with Supreme Court and Circuit precedent, I would conclude that his sworn affidavit—which, as noted, contains allegations that counsel failed to inform him of the immigration consequences of his plea and that he told counsel he wanted to exercise his right to trial twice—is sufficient to conclude that Kayode has presented evidence to support his assertion that but for counsel's deficiencies, he would have rejected the plea agreement and insisted on proceeding to trial. These facts are not conclusively rebutted by the record and support his claim that counsel's deficiencies prejudiced him.

Second, the majority discounts Kayode's assertions regarding his purported defense to the charges. Although the district court made a finding

of fact that the Government's evidence against Kayode was "overwhelming," the court made no finding whatsoever with regard to Kayode's allegations that he had only a minor role in the fraudulent scheme—which, if established, could defend against the charges that he *knowingly* aided and abetted others in devising a scheme and artifice to defraud various banks. While seemingly strong evidence of guilt may be a relevant consideration in the prejudice inquiry "inasmuch as a reasonable defendant would surely take it into account," *United States v. Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012), the evidence here is far from "invincible on its face," and does not dictate a conclusion that Kayode cannot demonstrate that a rational defendant under these circumstances would have rejected the plea and proceeded to trial. *See id.* at 255-56 (4th Cir. 2012) (explaining that the Fourth Circuit has found that "counsel's affirmative misadvice on collateral consequences to a guilty plea was prejudicial where the prosecution's evidence 'proved to be more than enough' for a guilty verdict but was 'hardly invincible on its face.'"); *see also Gonzalez v. United States*, 722 F.3d 118, 132 (2d Cir. 2013) (rejecting the district court's prejudice analysis which was "based solely on the strength of the government's case and the likelihood of a longer sentence upon conviction").[7]

Despite the government's contention regarding the seizure of hundreds of credit cards, check books, and stolen merchandise, Kayode's allegation that these items belonged to someone else and that he had only a minor role in the fraud is not "conclusively negated" by the limited record here. Rather, the record reveals that Kayode repeatedly asserted, however inarticulately or unconvincingly, his minimal role in the crime. For example, at rearraignment,

---

[7] Indeed, this court has recently found a reasonable probability that, absent the district court's Rule 11 violation, the defendant would have rejected a plea deal and exercised his right to trial, despite video evidence that implicated the defendant in a drug conspiracy. *See United States v. Hemphill*, 748 F.3d 666, 677 (5th Cir. 2014).

when asked by the district court whether he "kn[e]w what he was doing at the time," Kayode responded, "No, sir." Similarly, at sentencing, Kayode refuted the allegations contained in the pre-sentence report and insisted that some of the evidence seized from his home belonged to others that he was trying to help by storing items for them, and later he reiterated that "all the stuff does not belong to me." In fact the pre-sentence investigation report prepared by the probation department reflects that at least six others' fingerprints were found on the stolen mail, and does not indicate that Kayode's fingerprints were discovered on any of the evidence seized from his home. The record therefore does not negate Kayode's factual allegations that he would have proceeded to trial to assert his defense to the charges, satisfying *Friedman*'s first prong. *Friedman*, 588 F.2d at 1015. Rather, we are faced with an "incomplete record on [this] relevant factor" and thus the "district court should have held an evidentiary hearing before dismissing the § 2255 application." *Rivas-Lopez*, 678 F.3d at 359 (vacating the district court's order denying petitioner's ineffective-assistance-of-counsel claim and remanding for an evidentiary hearing where the petitioner and counsel provided conflicting representations regarding counsel's purported misadvice and the prejudice resulting therefrom, and the record was inconclusive as to several relevant facts that would impact the *Strickland* analysis).

Moreover, although Kayode does not present evidence beyond his affidavit to support this allegation, "it is not clear how [Kayode, who is incarcerated and without legal representation,] could have obtained [other evidence to support this allegation] prior to filing his motion." *See Reed*, 719 F.3d at 374. The current record, which contains the Government's accusations and a summary of the investigation undertaken—all untested by the adversarial process—can "cast no real light," *Machibroda*, 368 U.S. at 494-95, on the potential merit of Kayode's undeveloped theory of defense. Kayode's

"[s]pecific and detailed factual assertions . . . , while improbable, cannot at this juncture be said to be incredible." *Id.* Thus, his "motion and affidavit[] raise issues of fact, and Section 2255 requires that a hearing be held to resolve these issues." *See Roberts v. United States*, 486 F.2d 980, 982 (5th Cir. 1973) (vacating the district court's denial of petitioner's Section 2255 motion and remanding for an evidentiary hearing, concluding that "a Section 2255 petitioner has a right to present evidence in support of his allegations when there exists issues of fact, even though his position be 'improbable and unbelievable'").

## 2.

Kayode's allegations, if true, "might support a constitutional claim of ineffective assistance of counsel." *See Friedman*, 588 F.2d at 1017. If the allegations regarding Kayode's minor role in the crime were proven true, then Kayode would likely be able to rebut the Government's contention that the evidence was so weighty that it would have been irrational for a defendant under these circumstances to have rejected the plea and proceeded to trial. "A mentally competent defendant . . . has the constitutional right to insist on going to trial rather than pleading guilty, even if the strength of the prosecution's evidence may make that insistence seem irrational." *Gonzalez*, 722 F.3d at 132-33 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). Accordingly, Kayode need not go so far as demonstrating that he necessarily would have been acquitted based on his defense to the charges. *See Kovacs v. United States*, 744 F.3d 44, 53 (2d Cir. 2014) ("[T]he question is not whether the defense would ultimately have been successful."). Rather, he must establish that "a decision to reject the plea bargain would have been rational under the circumstances," *Padilla* 559 U.S. at 372, and that but for counsel's errors, there is a reasonable probability of a more favorable outcome, *Strickland*, 466 U.S. at 694. Contrary to the implicit suggestions by the district court and the majority, under

*Strickland*, Kayode need not establish that "counsel's deficient conduct more likely than not altered the outcome of the case," but, rather, he most demonstrate only a reasonable probability of a different outcome, "sufficient to undermine confidence in the outcome." *Id.* at 693-94.[8]

Here, taking into consideration Kayode's strong ties to the United States—Kayode has resided in Texas for over thirty years, where his young child currently lives—as well as the fact that one of the counts of conviction has been vacated on appeal because the factual basis submitted by the Government at rearraignment was insufficient to establish an element of one of the charges,[9] then if Kayode could have established that he did not knowingly commit bank fraud, he may have been able to demonstrate that but for counsel's deficient representation, he would have rationally rejected the plea deal and obtained a more favorable outcome. *Padilla*, 559 U.S. at 372.

Based on the limited record here, it is "not at all clear that [Kayode] has not been prejudiced by counsel's allegedly deficient performance." *See Reed*,

---

[8] "[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, *United States v. Agurs*, 427 U.S. 97, 104, 112–113 (1976), and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872–874 (1982)." *Strickland*, U.S. at 694; *see also id.* at 703 (Brennan, J., concurring in part and dissenting in part) ("[R]ejecting the strict 'outcome-determinative' test employed by some courts, the Court adopts as the appropriate standard for prejudice a requirement that the defendant 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' defining a 'reasonable probability' as 'a probability sufficient to undermine confidence in the outcome.'") (citation omitted); *see id.* at 707 (Justice Marshall, dissenting) ("[T]he majority holds that only an error of counsel that has sufficient impact on a trial to 'undermine confidence in the outcome' is grounds for overturning a conviction.").

[9] Specifically, the aggravated identity theft charge which Kayode pleaded guilty to was vacated in 2010, when this court determined that (as conceded by the Government) the factual basis was insufficient to establish an essential element of the crime—that Kayode "knew the means of identification used or possessed belonged to an actual person[,]" as required for an aggravated identity theft conviction, pursuant to *Flores-Figueroa v. United States*, 556 U.S. 646 (2009). *See United States v. Kayode*, 381 F. App'x 323 (5th Cir. 2010) (unpublished).

719 F.3d at 375.  Therefore, this court should reverse and remand for further proceedings, including an evidentiary hearing.  *See, e.g.*, *id.* at 375; *Reagor*, 488 F.2d at 517.  Kayode, "denied an opportunity to be heard, 'has lost something indispensable, however convincing the [Government's] showing.'" *See United States v. Hayman*, 342 U.S. 205, 220 (1952) (quoting *Synder v. Commonwealth of Massachusetts*, 291 U.S. 97, 116 (1934)).

## II. Lack of Relevance of Perfunctory Judicial Admonishments to Prejudice Inquiry

In addition to the majority's failure to acknowledge Kayode's right to an evidentiary hearing to develop facts to support his potentially viable claim, I respectfully disagree that the perfunctory judicial admonishment provided to Kayode moments before he entered his guilty plea could excuse or lessen the prejudice to Kayode's defense caused by his attorney's ineffective assistance.

Among other factors in its totality-of-the-circumstances prejudice analysis, the majority considers the fact that moments before Kayode pleaded guilty, the judge warned him that he "may" be deported.  More specifically, the district court informed Kayode and two other defendants pleading guilty alongside him that "*if you are not a citizen* of the United States, you need to understand that a felony conviction *may lead* to your deportation or exclusion from the country."  Then, directing his attention to Kayode, whom the judge noted was a naturalized citizen, the court asked if Kayode understood that, "*if your citizenship is revoked* you also . . . that conviction *may lead* to your deportation or exclusion from the country?"  The majority concludes that this judicial admonishment and Kayode's affirmative response to the judge's question as to whether Kayode understood such potential consequences, "weighs against" finding prejudice.  *Ante,* at 14.

It may be possible that in a different kind of case, the petitioner's receipt of a judicial admonishment regarding immigration consequences will weigh

against a finding of prejudice.  However, the prejudice inquiry is context- and fact-specific[10] and thus a court faced with an ineffective-assistance-of-counsel claim under *Padilla* should not automatically consider and weigh such general, tentative judicial admonishments in every case.  Applying this fact-specific analysis, I would conclude that, in this case, the judge's tentative warning provided to Kayode at the plea colloquy does not weigh against, diminish, or excuse a finding of prejudice caused by the ineffective assistance of his counsel.

## A.

Preliminarily, it is important to recognize that a Sixth Amendment claim of ineffective-assistance-of-counsel under *Padilla* may take a wide variety of forms.  A petitioner may, like Padilla, contend that counsel provided ineffective assistance by failing to advise him regarding the adverse immigration consequences of a proposed guilty plea before entering the plea. *Padilla*, 559 U.S. at 369.  Alternatively, a petitioner may allege that despite his communicating to counsel that the potential for deportation was the "most important part . . . of the penalty that may be imposed," *id.* at 364, counsel failed to "plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation," *id.* at 373, and, instead, encouraged the defendant to plead guilty to a charge that would result in deportation.  Or a petitioner may allege that counsel provided inaccurate legal advice that encouraged the petitioner to proceed to trial, foreclosing his ability to negotiate for a plea deal that could have avoided or reduced the risk of deportation.  *See, e.g., Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (holding that counsel who encouraged the defendant to reject a favorable plea offer and proceed to trial based on erroneous advice that the

---

[10] *See, e.g., Sears v. Upton,* 561 U.S. 945, 955 (2010) ("[T]he *Strickland* [prejudice] inquiry requires [a] probing and fact-specific analysis . . . .").

No. 12-20513

defendant "could not be convicted at trial," provided ineffective assistance of counsel).

As noted by the majority, the Supreme Court's Sixth Amendment jurisprudence makes clear that prejudice is a context-specific inquiry. Depending on the nature of the petitioner's allegations, in some cases establishing prejudice may require a showing that but for counsel's errors, the petitioner would have rejected the plea and insisted on proceeding to trial, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)—an inquiry that "will depend in part on a prediction of what the outcome of a trial might have been," if for example, the petitioner alleges that counsel failed to adequately investigate his case or failed to inform him of an affirmative defense. *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). In other cases, for example if the petitioner alleges that counsel failed to communicate a favorable plea deal offer from the prosecution to the client, the petitioner must show that there is "a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Because the prejudice inquiry itself changes depending on the contours of the petitioner's Sixth Amendment claim, judicial admonishments provided at the plea colloquy are not relevant to the prejudice inquiry in every ineffective-assistance-of-counsel claim in which the defendant invokes *Padilla*. For example, a petitioner may concede that, although he was aware of a small chance of adverse immigration consequences before he pleaded guilty, counsel was ineffective by failing to advise him of the *certain* or near-certain deportation consequence of his guilty plea. In such a case, a judicial warning of possible deportation simply mirrors the bad advice of defense counsel in failing to advise him that deportation would certainly result from the guilty plea. To establish prejudice, the petitioner would have to show that had he

34

No. 12-20513

been advised of the *certain* consequences of deportation, he would have rationally rejected the plea, *Padilla*, 559 U.S. at 372, and that there is a reasonable probability of a different outcome, *Strickland*, 466 U.S. at 694. The judicial admonishment regarding *possible* deportation consequences would be irrelevant because "[e]ven if [the petitioner] was aware, when he pled, of the 'possibility' that he might incur some risk of deportation by entering a plea, this does not show that he would not have gone to trial rather than plead guilty had he been properly advised that a plea would make his deportation virtually certain." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011).

Likewise, if a petitioner's Sixth Amendment claim is that counsel was ineffective in his failure to "plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation," *Padilla*, 559 U.S. at 373, then the judge's general admonishment provided after plea bargaining has terminated will be irrelevant in determining whether, but for counsel's deficient representation during the plea bargaining stage, a "plea offer [that reduced the chances of deportation] would have been presented to the court[,] that the court would have accepted its terms, and that the conviction or sentence, or both, . . . would have been less [likely to result in deportation] than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385. In such an ineffective-assistance-of-counsel claim, the petitioner's comprehension of the judge's tentative warnings do not refute or shed any light on his post-conviction assertions that counsel failed to provide reasonably effective advocacy on his behalf in light of his desire to avoid deportation. Therefore, if petitioner were able to demonstrate that he was prejudiced by counsel's failure to seek a more favorable plea bargain that actually would have been available to him, then the prejudice to his case would not and should not be excused or diminished by a judicial warning of "possible deportation."

35

No. 12-20513

**B.**

Applying this fact-bound, context-specific analysis, I conclude that the judicial admonishment here does not and should not weigh against a finding of prejudice. Kayode avers via sworn affidavit that his defense attorney "never once" discussed with him the immigration consequence of the guilty plea nor even reviewed the contents of, or provided him an opportunity to read, the written plea agreement before coercing him to sign it and enter a guilty plea that would certainly result in his loss of citizenship. Kayode avers that he signed the plea agreement before the plea colloquy without understanding the immigration consequences of his guilty plea, and that, based on his communications with counsel, he believed that upon signing the agreement, "there was no going back"—he believed that he had irrevocably forfeited his right to trial and was bound by the agreement to enter the guilty plea. Further, no one told him that his entry of the proposed guilty plea would result in his *certain* loss of citizenship and exposure to deportation. Even though the judge broached the subject of *possible* revocation of citizenship and deportation in his warning at the plea colloquy, defense counsel told Kayode that he could not change his plea because his signing of the plea agreement was irrevocable. Kayode argues that if his attorney had warned him of the consequences of his guilty plea (*i.e.*, the certain revocation of his naturalized citizenship and consequent exposure to deportation), he would have rejected the plea deal and proceeded to trial.

The judge's tentative advisory regarding potential deportation consequences provided to Kayode mere moments before he pleaded guilty, after plea bargaining was complete, and after Kayode signed a plea agreement he thought he was bound by, does not provide us with any information as to what advice or advocacy counsel provided, or what outcome could have resulted had counsel effectively represented Kayode throughout the plea bargaining stage.

36

The judge's tentative admonishment is not inconsistent with Kayode's assertions that *prior* to the plea colloquy, he was never advised by *counsel* of the near-certain deportation consequences of his plea and believed, based on discussions with counsel, that he was bound by the plea agreement, which he signed in court at his counsel's direction before the final plea proceeding. Accordingly, the judge's warning at the plea proceeding does not make it less probable that a different outcome could have resulted if Kayode had received competent advice from his attorney and had been afforded an effective advocate throughout the pre-plea proceedings. For these reasons, I disagree that the particular judicial admonishment here realistically brings any significant weight to bear against a finding of prejudice.

* * *

In sum, while it is possible that a judicial admonishment may be relevant to the prejudice inquiry in a different kind of case, the weight, if any, given to the admonishment will depend upon the particular facts of the case, as well as the specific arguments raised and allegations or evidence presented by the petitioner. Here, in light of Kayode's allegations, affidavit, and arguments, I fail to see how the judicial admonishment is inconsistent with or weighs against a finding of prejudice. Moreover, I dissent from the judgment that affirms the district court's dismissal of Kayode's habeas petition without an evidentiary hearing, despite a limited record that does not conclusively show that he is entitled to no relief on his Sixth Amendment claim.