**Leroy FRIEDMAN, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 78–1663.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1979.

Joel W. Todd, Philadelphia, Pa., for petitioner-appellant.

Jack V. Eskenazi, U. S. Atty., C. Wesley G. Currier, R. Jerome Sanford, Asst. U. S. Attys., Miami, Fla., for respondent-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

PER CURIAM:

As is only natural where a supplicant has little to lose but everything to gain, post-conviction relief motions under 28 U.S.C. § 2255 are as often as not marked by the deceit born of self-interest as by substantial claims of injustice. We sympathize with the problems that our District Courts encounter in attempting to separate the wheat from the chaff in dealing with the daily flow of such motions. Nonetheless, the statute commands the District Courts to grant a prompt hearing on all motions brought pursuant to it "[u]nless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief." [1] In this case, the limited hearing conducted by the District Court on petitioner Leroy Friedman's § 2255 motion was not adequate to *conclusively* determine his claims that he had been tried and convicted without the reasonably effective assistance of counsel guaranteed him by the Sixth Amendment. We therefore vacate and remand this cause to the District Court to consider it again after having conducted a fuller evidentiary hearing.

In 1973, Friedman was indicted, along with 16 others, on 29 counts of mail fraud, wire fraud, interstate transportation of fraudulently converted securities, and conspiracy. Having claimed indigency, Friedman was appointed counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, and F.R.Crim.P. 44. Represented by this court-appointed attorney, Friedman went to trial together with four other defendants in November 1973. After a complex month-long trial, during which one of the defendants was severed, the jury returned guilty verdicts against three defendants but was unable to reach a verdict concerning Friedman and a mistrial was declared as to him.

Prior to a second trial, Friedman wrote the Trial Judge to request a change of court-appointed counsel. He alleged that his attorney for the first trial had reviewed little or none of the pre-trial discovery material, had not consulted with him prior to trial about the facts and circumstances of the case, had relied in his direct examination almost entirely upon questions independently prepared by Friedman, and had not yet reviewed the transcript or Friedman's detailed notes (prepared at the attorney's instructions) from the first trial. Shortly thereafter, Friedman's court-appointed attorney sought to have co-counsel appointed to assist him in the upcoming second trial on the ground that another protracted trial would make it difficult for him to fulfill his responsibilities to his other clients. The Trial Judge denied both requests. With regard to Friedman's motion for change of court-appointed counsel, the Judge reasoned that Friedman's original attorney was already familiar with the intricacies of the case and, moreover, had obtained a relatively favorable result for Friedman in the first trial. With regard to the attorney's motion, the Judge reasoned that appointment of co-counsel was not necessary since the Government anticipated that the second trial would be much shorter.

Still represented by the same attorney, Friedman was tried again, together with the codefendant who had been severed from the first trial, in November 1974. This time the jury found him guilty on seven counts of the indictment (the Trial Judge having directed verdicts of acquittal as to Friedman on the other 22 counts). Friedman was sentenced to a total of seven years

---

1. 28 U.S.C. § 2255 [emphasis added].

imprisonment and his conviction was affirmed by this Court.[2]

Friedman began serving his sentence in May 1976. About one month later, he filed a pro se motion to reduce his sentence under F.R.Crim.P. 35, in which he alleged first that he had not subpoenaed several witnesses at his trial because his court-appointed attorney had not told him that as an indigent he could subpoena witnesses at government expense, and second that he may have been prejudiced by the failure of his attorney to discuss with him the facts and circumstances of his case prior to trial. The District Judge dismissed the motion because it had not been filed within 120 days after issuance of the mandate affirming Friedman's conviction on appeal, as Rule 35 requires.

In February 1977 Friedman filed this petition under § 2255 to vacate, set aside, or correct his sentence. He alleged four grounds upon which he based his claim that he had not been accorded effective representation by his court-appointed counsel: (1) his counsel had misinformed him that defense witnesses could be obtained only at his personal expense; (2) his counsel had not discussed his testimony with him prior to trial; (3) his appointed counsel failed to make various motions during trial; and (4) his court-appointed counsel was unable to render effective assistance in his rather complex criminal case "where the fee is limited to a set amount."

Friedman later filed a supplemental petition, elaborating upon these allegations and adding new ones. In this petition he repeated the charges of inadequate preparation that he had made in his request between trials for a change of attorney. He also provided the names of two character witnesses and eight potential fact witnesses whom his court-appointed counsel had not interviewed and who were not called to testify, presumably because Friedman was unable to afford their production. The petition failed to state, however, what exculpatory testimony these witnesses might have given had they been called, although it did include affidavits from the two character witnesses.

Finally, the supplemental petition alleged that even though Friedman's counsel had been court appointed, he had repeatedly demanded from Friedman an additional fee. According to the petition, the lawyer had told Friedman that he would receive only $1,000 as an appointment fee and he justified his demand for additional money with the comment, "What do you expect for $1,000?" Friedman claimed that he had been able to raise only $400, which he paid to his attorney, and to support this claim Friedman included a photostatic copy of a cancelled personal check for $400, dated Nov. 8, 1973, made payable to his court-appointed attorney.

After receiving this supplemental petition, the District Court ordered Friedman's trial attorney to respond to the allegations contained in the § 2255 petition. In his affidavit filed in response to this order, the attorney contradicted all of Friedman's charges concerning lack of preparation and stated that Friedman had never provided him with the names of any possible defense witnesses. He also explained that prior to and during the first trial, Friedman had made a number of long-distance telephone calls from his law office[3] and that the $400 check represented reimbursement for such personal expenses that he had incurred on behalf of Friedman and for some money that he had advanced Friedman.

A hearing, pursuant to an order of the District Court, was held on Friedman's petition on February 6, 1978. Among those present at this hearing were Friedman, a lawyer whom he had retained to represent him on his petition, and a lawyer representing Friedman's former court-appointed counsel. Although in his order the Judge

---

**2.** *United States v. Mitzkoff*, 5 Cir., 1975, 524 F.2d 488.

**3.** Friedman lived in Philadelphia, Pa.; the trial was held in Miami, Fla., where the attorney's office was also located; and, according to the attorney, Friedman called his wife and parents back in Philadelphia almost daily.

had not delimited the issues to be heard, at the hearing itself he announced that he would only receive evidence on the issue of whether Friedman had paid his court-appointed counsel $400 for witnesses that ultimately were not called, and, if so, whether the failure to call those witnesses affected the outcome of the trial. The District Judge stated that on the basis of his experience as presiding Judge at Friedman's two trials, he found all of the other allegations in Friedman's petition to be "completely spurious" and "patently frivolous," that Friedman was "clearly guilty" and that the mistrial and hung jury obtained in the first trial "was a masterful stroke on the part of defense counsel." When the Judge was told that Friedman's claim was not that the $400 had been paid to obtain defense witnesses, but rather to satisfy in part the attorney's demand for fees over and above what he would receive from his court ap-

4. At the hearing, it was stated that the attorney had initially requested $2500 from Friedman.

5. The District Judge concluded the hearing with the following comments:

[E]ven if true, the fact that he paid $400 * * to get better representation wouldn't affect his representation that he actually got. And I presided over this trial. I saw the whole case. I witnessed the lawyers in the presentation of the evidence. The case went on for many, many days.

Mr. Friedman got an absolutely—got two absolutely fair trials.

The case has been affirmed all the way. And there is nothing here that has been raised that would indicate that any of his rights have been denied him.

Therefore, the application is denied.

6. The full text of 28 U.S.C. § 2255 is as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause

pointment,[4] the Judge terminated the hearing and denied the petition for relief, reasoning that Friedman's complaint was essentially a simple civil dispute over $400 and had "nothing to do with the petition for habeas corpus or whether or not he got effective representation.[5]" No evidence was heard on any of Friedman's other allegations.

### The Hearing Is The Thing

■ The portion of 28 U.S.C. § 2255 pertinent to this appeal states that

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.[6]

notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

Application of this statutory command to a petition such as Friedman's demands a two-step inquiry:

(1) Does the record in the case, as supplemented by the Trial Judge's "personal knowledge or recollection," [7] conclusively negate the factual predicates asserted in support of the motion for post-conviction relief?

(2) Would the petitioner be entitled to post-conviction relief as a legal matter if those factual allegations which are not conclusively refuted by the record and matters within the Trial Judge's personal knowledge or recollection are in fact true?

If the answer to the first inquiry is a negative one and the answer to the second inquiry an affirmative one, then § 2255 requires the District Court to conduct an evidentiary hearing on those factual allegations which, if found to be true, would entitle the petitioner to post-conviction relief.[8]

■ In connection with the first inquiry, the District Judge in this case relied heavily upon his own observations of the performance of Friedman's court-appointed counsel during both trials in concluding that that performance was not substandard. Although these personal observations were relevant to the refutation of some of Friedman's allegations—for example, that his counsel did not cross-examine witnesses effectively or make various motions that a reasonably competent attorney would have made—they could not of course provide a basis for deciding that other allegations— for example, inadequate trial preparation, the failure to call certain material witnesses, and the demand and partial payment of a fee in addition to that provided for under

the Criminal Justice Act—were false. Nor does the record conclusively refute those allegations. If anything, it tends to corroborate them in that Friedman had made similar complaints in his between-trial motion for a change in court-appointed counsel and in his belated Rule 35 motion, and the attorney himself had requested assistance prior to the second trial. While it is true that the attorney controverted these allegations in his affidavit filed in response to the District Judge's order, we have held that contested fact issues in § 2255 cases cannot be resolved on the basis of affidavits, e. g., *Montgomery v. United States*, 5 Cir., 1972, 469 F.2d 148; *Brown v. United States*, 5 Cir., 1972, 462 F.2d 681. Thus, the denial of Friedman's petition without a full hearing cannot be justified on the ground that the factual predicates asserted in support of the petition were conclusively negated by the record and matters within the District Judge's personal ken.

Having concluded that Friedman's petition survives the first stage of our inquiry, we must next inquire whether his various factual allegations, if proved to be true, would be sufficient to make out a Sixth Amendment claim to post-conviction relief. The standard that must guide this inquiry is a familiar one.

We interpret the [Sixth Amendment] right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance.

*MacKenna v. Ellis*, 5 Cir., 1960, 280 F.2d 592, 599, *cert. denied*, 1961, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 [emphasis in original]; *accord, Herring v. Estelle*, 5 Cir., 1974,

---

**7.** To be sure, § 2255 does not explicitly authorize District Judges to rely upon their personal observations in ruling on motions brought pursuant to that statute. Nevertheless, the Supreme Court has, by implication, allowed that District Judges may "draw upon [their] own personal knowledge or recollection" in passing upon factual allegations in § 2255 petitions that pertain to events that occurred in their presence. *See Machibroda v. United States*, 1962, 368 U.S. 487, 494–95, 82 S.Ct. 510, 7 L.Ed.2d

473; *see also McKinney v. United States*, 9 Cir., 1973, 487 F.2d 948, 949–50; *Panico v. United States*, 2 Cir., 1969, 412 F.2d 1151, 1155–56, *cert. denied*, 1970, 397 U.S. 921, 90 S.Ct. 901, 25 L.Ed.2d 102.

**8.** *See generally Machibroda, supra*, 368 U.S. at 494–96, 82 S.Ct. 510; *Holland v. United States*, 5 Cir., 1969, 406 F.2d 213, 216; *Porter v. United States*, 5 Cir., 1962, 298 F.2d 461.

# 1016

491 F.2d 125, and cases cited therein, 491 F.2d at 127 n.4.

■ The District Judge obviously thought, based on his observations during two extended trials, that Friedman's counsel had indeed rendered reasonably effective assistance, regardless of whether Friedman's various allegations were true. To be sure, this approach—focusing on the actual in-court representation accorded the petitioner—is often conclusive. As we remarked in *United States v. Gray*, 5 Cir., 1978, 565 F.2d 881, 887, *cert. denied*, 1978, 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807, "A review of Fifth Circuit law indicates that this Court's methodology involves an inquiry into the actual performance of counsel in conducting the defense and a determination whether reasonably effective assistance was rendered based on the totality of the circumstances and the entire record." But the reason that the actual performance of counsel, as observed by the Trial Judge and as reflected in the record, is often dispositive of claims of ineffective assistance is that frequently the court has no other basis for decision outside the unvarnished and speculative allegations characteristic of so many § 2255 petitions. Where, however, the petitioner supports his claims of inadequate preparation, attorney indifference, failure to call witnesses, etc., with plausible factual allegations and evidence sufficient to raise a substantial doubt that his attorney's in-court performance was not as effective as it might seem to third-party observers, the court is obligated to delve behind the scenes and ascertain whether the attorney, either by inaction or through ill-taken action, failed to meet the standards of a reasonably competent and devoted advocate, to the ultimate prejudice of the petitioner.

■ On the basis of the record in this case, we cannot dismiss the possibility raised by Friedman's petition that his court-appointed counsel, although perhaps quite competent while under the in-court scrutiny of the District Judge, was, when outside the courthouse, flagrantly derelict in fulfilling his responsibilities to Friedman. In *Gaines*

*v. Hopper*, 5 Cir., 1978, 575 F.2d 1147, 1149–50, we acknowledged that "[i]nformed evaluation of potential defenses to criminal charges and meaningful discussion with one's client of the realities of his case are cornerstones of effective assistance of counsel." To like effect is *Caraway v. Beto*, 5 Cir., 1970, 421 F.2d 636, 637–38:

> Certainly, an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case. * * * Our adversary system is designed to serve the ends of justice; it cannot do that unless accused's counsel presents an intelligent and knowledgeable defense. Such a defense requires investigation and preparation.

If Friedman's allegations are true, the informed evaluation of personal defenses and the meaningful discussion of the realities of the defendant's case called for in *Gaines*, as well as the investigation and preparation called for in *Caraway*, were lacking in this case.

■ Nor is the allegation that the court-appointed counsel demanded a fee to supplement his court-awarded fee irrelevant to this inquiry. Contrary to the District Judge's conclusion, the consequences of this demand, if true, extend beyond the provisions of the Criminal Justice Act, the possibility of disciplinary action against the attorney, and the possibility of Friedman recovering the $400 he paid his attorney via civil suit. For if indeed the attorney demanded the fee, explaining that the court-awarded fee would be too meager to justify more than a perfunctory effort on Friedman's behalf, and if Friedman was only able to satisfy that demand in part, there is an increased likelihood that the attorney's efforts were in fact perfunctory and that Friedman did not receive the reasonably effective assistance of a diligent and devoted advocate.

■ It is also possible that the attorney's failure to move the court to subpoena certain witnesses at government expense constituted ineffective assistance of counsel. *See Bell v. Georgia*, 5 Cir., 1977, 554 F.2d 1360; *Gomez v. Beto*, 5 Cir., 1972, 462

F.2d 596. To be sure, Friedman's petition was lacking on this score in that it failed to state what helpful testimony these witnesses could have provided. *Cf. Buckelew v. United States*, 5 Cir., 1978, 575 F.2d 515, 521. But we conclude that this deficiency should not preclude a hearing on the issue of the uncalled witnesses in conjunction with the hearing that must be held in any event on the several allegations of inadequate and indifferent preparation.

Our decision with regard to these latter allegations should not be read to imply that every § 2255 petitioner who merely alleges that his court-appointed attorney did not adequately prepare for trial or demanded an additional fee is automatically entitled to an evidentiary hearing. If this case involved merely conclusory assertions of this sort, raised for the first time in the motion for post-conviction relief, dismissal of the petition without a hearing on the basis of the attorney's in-court performance might well be justified. But in this case Friedman supported his assertions with a relatively detailed petition and a copy of the $400 cancelled check. Moreover, on two previous occasions Friedman had lodged similar complaints concerning the failures of his court-appointed counsel. And, significantly, the attorney himself had once requested assistance in defending Friedman.

Against this background we cannot conclude that Friedman's § 2255 motion, together with the files and records of the case, *conclusively* show that under no circumstances would Friedman be entitled to relief. We therefore vacate and remand for reconsideration of the petition after as full a hearing as is necessary to decide all of these unresolved factual allegations which, if true, might support a constitutional claim of ineffective assistance of counsel. This is important not only to Friedman but also to his erstwhile attorney who is charged with serious professional improprieties and who should have the opportunity to vindicate himself of those charges, should they be false. We do not, of course, pretend to prejudge this or any other issue raised in Friedman's petition. Nor do we predict or intimate the legal consequences of any find-ings or holdings on the matters remanded for further hearing. The point is that we do not know, nor does the District Court know, whether Friedman's allegations are indeed true and whether, as a consequence, he was unconstitutionally deprived of reasonably effective assistance of counsel when he was convicted and sentenced. The hearing is the thing.

VACATED and REMANDED.