JAMES L. DENNIS, Circuit Judge,
dissenting:
Rasheed Babatunde Kayode, a federal prisoner, moved under 28 USC § 2255 to vacate his sentence alleging, inter alia, that his retained defense attorney provided ineffective assistance of counsel under Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010). The district court denied his motion and granted the Government’s motion to dismiss without an evidentiary hearing. Section 2255(b) of Title 28, in pertinent part, provides: “Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.” The majority affirms the district court’s denial of Kayode’s § 2255 petition without determining whether the motion and the files and records of the case “conclusively show that the prisoner is entitled to no relief.” See 28 U.S.C. § 2255(b). Because the motion, files and records of this case do not conclusively, or undoubtedly, show that Kayode is entitled to no relief, I respectfully dissent. In my view, this court should vacate the district court’s order and remand the case for further proceedings,, including an evidentiary hearing.
Additionally, I disagree with the majority’s conclusion that the vague and indeterminate judicial admonishment provided to Kayode during his guilty plea proceeding, moments before he pleaded guilty, weighs against a finding of prejudice under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In most cases, including the present one, in which the judge merely adds a perfunctory,[1] general warning of possible adverse immigration consequences near the end of the defendant’s guilty plea colloquy, that judicial warning cannot excuse, eliminate, or diminish any prejudice that may have been caused defendant by the ineffective *731 assistance of his counsel leading up to his guilty plea. Such a perfunctory judicial warning, coming only after the defendant has taken all but the final prejudicial step toward his conviction, affords such a defendant no genuine protection against his counsel’s wrongful acts or omissions, and therefore does not offset or weigh against the prejudice caused the defendant by the derelictions of his counsel.
I. Right to an Evidentiary Hearing
As the case is presented to us today, the proper question is not the ultimate merits of Kayode’s claim of ineffective-assistance-of-counsel but, rather, whether the district court erred in denying the claim without granting an evidentiary hearing. We review the district court’s decision for an abuse of discretion. United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir.1998).
A.
Section 2255 permits a federal prisoner to bring a collateral challenge by moving the sentencing court to vacate, set aside, or correct his sentence. 28 U.S.C. § 2255(a). Once a petitioner files a § 2255 motion, the district court is required by statute to hold a hearing “[ujnless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.” 28 U.S.C. § 2255(b); see also United States v. Reed, 719 F.3d 369, 373 (5th Cir.2013); Dupart v. United States, 541 F.2d 1148, 1149 (5th Cir.1976) (per curiam). As this court has explained,
Application of this statutory command ... demands a two-step inquiry:
(1) Does the record in the case, as supplemented by the Trial Judge’s “personal knowledge or recollection,” conclusively negate the factual predicates asserted in support of the motion for post-conviction relief?
(2) Would the petitioner be entitled to post-conviction relief as a legal matter if those factual allegations which are not conclusively refuted by the record and matters within the Trial Judge’s personal knowledge or recollection are in fact true?
If the answer to the first inquiry is a negative one and the answer to the second inquiry an affirmative one, then s. 2255 requires the District Court to conduct an evidentiary hearing on those factual allegations which, if found to be true, would entitle the petitioner to post-conviction relief.
Friedman v. United States, 588 F.2d 1010, 1015 (5th Cir.1979) (footnote omitted). Thus, a district court abuses its discretion by denying an evidentiary hearing if the motion sets forth specific, controverted issues of facts that are not conclusively negated by the record and that, if proved at the hearing, would entitle the petitioner to any relief. See, e.g., Mack v. Smith, 659 F.2d 23, 25 (5th Cir.1981) (“[W]here [the petitioner] would be entitled to post-conviction relief if his factual allegations were proven true, s. 2255 requires an evidentiary hearing on those allegations.”) (citing Friedman, 588 F.2d 1010, approvingly); see also United States v. Thompson, 721 F.3d 711, 713 (D.C.Cir.) cert. denied, — U.S. -, 134 S.Ct. 629, 187 L.Ed.2d 407 (2013) (“[Wjhere a defendant raises a colorable and previously unexplored ineffective assistance claim on appeal, we remand for further district court proceedings unless the record alone conclusively shows that the defendant either is or is not entitled to relief.”) (internal quotation marks omitted); Winthrop-Redin v. United States, 767 F.3d 1210, 1216 (11th Cir.2014) (“[A] petitioner need only allege — not prove — reasonably specific, non-conclusory facts that, if true, would entitle him to relief.”) (quotation marks and citation omitted).
*732 Further, “[cjontested fact issues in § 2255 cases must be decided on the basis of evidentiary hearings.” Reagor v. United States, 488 F.2d 515, 517 (5th Cir.1973). As the Supreme Court has explained, even if the Government contends that the petitioner’s allegations are “improbable and unbelievable,” if the petitioner makes specific and detailed assertions in his motion and affidavit that create contested issue of fact that, if true, entitle him to relief, an evidentiary hearing is warranted. Machibroda v. United States, 368 U.S. 487, 494, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); see also Fontaine v. United States, 411 U.S. 213, 214-15, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973) (vacating and remanding for an evidentiary hearing where the petitioner’s motion for “relief under s. 2255 sets out detailed factual allegations” that, if true, would support his contention that his “confession, his waiver of counsel, and the uncounseled plea of guilty” were all coerced); Blackledge v. Allison, 431 U.S. 63, 75, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (explaining that “[i]n administering the writ of habeas corpus and its § 2255 counterpart, the federal courts cannot fairly adopt a per se rule excluding all possibility that a defendant’s representations at the time his guilty plea was accepted were so much the product of such factors as misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment,” and remanding because the “record of the plea hearing did not, in view of the allegations made, conclusively show that the prisoner (was) entitled to no relief’) (footnote and internal citations omitted).[2]
B.
Ineffective-assistance-of-counsel claims under the Sixth Amendment require that *733 the petitioner demonstrate (1) that counsel provided deficient representation, and (2) that the petitioner was prejudiced by his attorney’s deficiencies. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice must be determined by inquiring whether “there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052.
In Padilla, the Court broke new ground[3] in holding that defense counsel’s failure to advise his client of immigration consequences of his guilty plea amounts to a violation of the criminal defendant’s Sixth Amendment right to effective assistance of counsel. 559 U.S. at 375, 130 S.Ct. 1473. Applying the Strickland two-pronged test, the Court concluded that Padilla’s counsel’s failure to advise him that a guilty plea would result in his removal from the country amounted to deficient representation under Strickland. Id. at 369, 130 S.Ct. 1473. The Court then remanded the case for a determination of whether Padilla was prejudiced by counsel’s errors and, thus, whether he was entitled to relief. Id. at 360, 130 S.Ct. 1473. The Court explained that to show prejudice in this context, Padilla must demonstrate that “a decision to reject the plea bargain would have been rational under the circumstances.” Id. at 372, 130 S.Ct. 1473.
Kayode alleges that his defense attorney violated his Sixth Amendment right to effective assistance of counsel by ignoring his requests to proceed to trial, coercively directing him to sign the plea agreement and berating him to enter a guilty plea all without ever advising him that, as a result, he would lose his citizenship and be deported. He further alleges that, but for counsel’s errors, he would have rejected the plea deal and proceeded to trial. The majority, although acknowledging that there are genuine disputes of fact regarding counsel’s deficiency, concludes that Kayode has not established that he was prejudiced by counsel’s deficient representation. However, neither the district court nor the majority, before concluding that Kayode failed to demonstrate prejudice, actually examined the motion, files and records of this case to determine whether they “conclusively” showed that Kayode was not entitled to relief — thereby ignoring the dictates of Section 2255(b) and denying Kayode his right to develop the factual basis for his claims. While Kayode may have significant hurdles to overcome to prove that his counsel’s deficiency prejudiced him, I cannot agree that the limited record here conclusively shows that Kay-ode was not prejudiced by counsel’s deficiencies. Rather, his specific factual allegations averred in his sworn affidavit are not negated by the record and, if proven true, “might support a constitutional claim of ineffective assistance of counsel.” See Friedman, 588 F.2d at 1017. Accordingly, I would reverse and remand for “as full a hearing as is necessary” id., so that the district court may develop the record, resolve contested fact issues, and reconsider its prejudice analysis in light of the findings of fact that impact the ultimate legal conclusions necessary to determine whether Kayode is entitled to relief.[4]
*734 1.
The record in the case does not “conclusively negate the factual predicates asserted in support of the motion for post-conviction relief.” See Friedman, 588 F.2d at 1015. Construing Kayode’s pro se affidavit liberally, as we must,[5] he has alleged, inter alia, that counsel: dismissed his requests to enter a not-guilty plea and proceed to trial; presented him with the written plea agreement for the first time in the district court, just moments before the guilty plea proceeding; failed to explain the contents of the written plea agreement nor allow him an opportunity to read it before insisting that he sign it; never explained to him that he would lose his citizenship and be deported if he pleaded guilty under the plea agreement; misadvised him that the plea agreement, once signed, was irrevocably binding and that the judge would vindictively punish him by imposing a harsher sentence if he did not go through with the plea agreement. Indeed, the majority agrees that these allegations are sufficient to create a genuine dispute of material fact regarding counsel’s deficiency under Padilla and Strickland. Ante, at 723.
In addition to the allegations regarding Kayode’s counsel’s deficiencies, he further contends that as a result of counsel’s failures, he signed the plea agreement before the plea colloquy without so much as reading it or understanding the consequences of entering his guilty plea and, had he been provided with effective counsel who would have properly advised him that he would lose his citizenship and be removed from this country as a result of his guilty plea, he would have rejected the plea deal and proceeded to trial. Further, Kayocle avers that he had a minor role in the fraudulent scheme and that the inculpatory evidence seized from his residence actually belonged to a “fellow Nigerian.” In his brief on appeal, Kayode also notes the results of a latent fingerprint examination of the stolen mail recovered from his home, which purportedly revealed the fingerprints of at least six identifiable individuals. There is no indication of whether or *735 not Kayode’s fingerprints were found on the stolen mail.
Kayode’s claims regarding his minor role in the fraud and his insistence that he would have proceeded to trial but for counsel’s deficient representation are not conclusively negated by the record, but the majority concludes that Kayode’s petition was properly denied without an evidentiary hearing. The majority erred in not addressing the first question presented by a § 2255 case in which the district court has denied relief without an evidentiary hearing, viz., whether the motion and the files and records of the case “conclusively show” that the prisoner is entitled to no relief. The majority seemingly reasons, after considering various factors, that Kay-ode is foreclosed from demonstrating prejudice because: (1) he did not put forth evidence to support his assertion that, but for counsel’s errors, he would have proceeded to trial; (2) he was unlikely to succeed at trial; (3) because he was unlikely to be acquitted and faced less prison time as a result of the plea agreement, he did not demonstrate that a rational person would have rejected the plea and proceeded to trial; and (4) he was admonished by the judge that he may lose his citizenship and may be removed from the country.[6]
In affirming summary judgment for the Government, the majority, like the district court, improperly disregards contested fact issues without the benefit of an evidentiary hearing to conclude that Kayode cannot establish he was prejudiced by counsel’s deficient representation. First, as noted, Kayode asserted via sworn affidavit that his attorney never told him he would lose his citizenship before signing the plea agreement and that, based on communications with his attorney, he thought that by signing the plea agreement he had irrevocably “given up his right to trial.” He averred that in preplea meetings with counsel he rejected the first proposed plea agreement and told counsel he wanted to go to trial. Kayode additionally contended that during off-the-record discussions with counsel during re-arraignment, he again asked if he could go to trial, but counsel informed him that he had already signed the plea agreement so he had “no choice but to plead guilty.” The majority considers this affidavit and concludes that, “[w]hile Kayode makes a number of sworn statements about his counsel’s actions in his affidavit, he does not aver that he would have gone to trial had he known of the immigration consequences of his plea.” Ante, at 725. Despite Kayode’s assertions, the majority erroneously disregards Kayode’s averment that he told his attorney he wanted to go to trial, and faults him for failing to expressly articulate in one clear statement that, but for counsel’s failure to inform him of the immigration consequences of his plea, he would have rejected the plea and insisted on proceeding to trial. Construing Kay-ode’s pro se affidavit liberally, in accordance with Supreme Court and Circuit precedent, I would conclude that his sworn affidavit — which, as noted, contains allegations that counsel failed to inform him of the immigration consequences of his plea and that he told counsel he wanted to exercise his right to trial twice — is sufficient to conclude that Kayode has presented evidence to support his assertion that but for counsel’s deficiencies, he would have rejected the plea agreement and insisted on proceeding to trial. These facts are not conclusively rebutted by the record and support his claim that counsel’s deficiencies prejudiced him.
Second, the majority discounts Kayode’s assertions regarding his purported defense to the charges. Although the district *736 court made a finding of fact that the Government’s evidence against Kayode was “overwhelming,” the court made no finding whatsoever with regard to Kayode’s allegations that he had only a minor role in the fraudulent scheme — which, if established, could defend against the charges that he knowingly aided and abetted others in devising a scheme and artifice to defraud various banks. While seemingly strong evidence of guilt may be a relevant consideration in the prejudice- inquiry “inasmuch as a reasonable defendant would surely take it into account,” United States v. Akinsade, 686 F.3d 248, 255 (4th Cir.2012), the evidence here is far from “invincible on its face,” and does not dictate a conclusion that Kayode cannot demonstrate that a rational defendant under these circumstances would have rejected the plea and proceeded to trial. See id. at 255-56 (4th Cir.2012) (explaining that the Fourth Circuit has found that “counsel’s affirmative misadvice on collateral consequences to a guilty plea was prejudicial where the prosecution’s evidence ‘proved to be more than enough’ for a guilty verdict but was ‘hardly invincible on its face.’ ”); see also Gonzalez v. United States, 722 F.3d 118, 132 (2d Cir.2013) (rejecting the district court’s prejudice analysis which was “based solely on the strength of the government’s case and the likelihood of a longer sentence upon conviction”).[7]
Despite the government’s contention regarding the seizure of hundreds of credit cards, check books, and stolen merchandise, Kayode’s allegation that these items belonged to someone else and that he had only a minor role in the fraud is not “conclusively negated” by the limited record here. Rather, the record reveals that Kayode repeatedly asserted, however inarticulately or unconvincingly, his minimal role in the crime. For example, at rearraignment, when asked by the district court whether he “kn[e]w what he was doing at the time,” Kayode responded, “No, sir.” Similarly, at sentencing, Kay-ode refuted the allegations contained in the pre-sentence report and insisted that some of the evidence seized from his home belonged to others that he was trying to help by storing items for them, and later he reiterated that “all the stuff does not belong to me.” In fact the pre-sentence investigation report prepared by the probation department reflects that at least six others’ fingerprints were found on the stolen mail, and does not indicate that Kay-ode’s fingerprints were discovered on any of the evidence seized from his home. The record therefore does not negate Kayode’s factual allegations that he would have proceeded to trial to assert his defense to the charges, satisfying Friedman’s first prong. Friedman, 588 F.2d at 1015. Rather, we are faced with an “incomplete record on [this] relevant factor” and thus the “district court should have held an evidentiary hearing before dismissing the § 2255 application.” United States v. Rivas-Lopez, 678 F.3d 353, 359 (5th Cir.2012) (vacating the district court’s order denying petitioner’s ineffective-assistance-of-counsel claim and remanding for an evidentiary hearing where the petitioner and counsel provided conflicting representations regarding counsel’s purported misadvice and the prejudice resulting therefrom, and the record was inconclusive as to several relevant facts that would impact the Strickland analysis).
Moreover, although Kayode does not present evidence beyond his affidavit to *737 support this allegation, “it is not clear how [Kayode, who is incarcerated and without legal representation,] could have obtained [other evidence to support this allegation] prior to filing his motion.” See Reed, 719 F.3d at 374. The current record, which contains the Government’s accusations and a summary of the investigation undertaken — all untested by the adversarial process — can “cast no real light,” Machibroda, 368 U.S. at 494-95, 82 S.Ct. 510, on the potential merit of Kayode’s undeveloped theory of defense. Kayode’s “[s]pecific and detailed factual assertions ..., while improbable, cannot at this juncture be said to be incredible.” Id. Thus, his “motion and affidavit ] raise issues of fact, and Section 2255 requires that a hearing be held to resolve these issues.” See Roberts v. United States, 486 F.2d 980, 982 (5th Cir.1973) (vacating the district court’s denial of petitioner’s Section 2255 motion and remanding for an evidentiary hearing, concluding that “a Section 2255 petitioner has a right to present evidence in support of his allegations when there exists issues of fact, even though his position be ‘improbable and unbelievable’ ”).
2.
Kayode’s allegations, if true, “might support a constitutional claim of ineffective assistance of counsel.” See Friedman, 588 F.2d at 1017. If the allegations regarding Kayode’s minor role in the crime were proven true, then Kayode would likely be able to rebut the Government’s contention that the evidence was so weighty that it would have been irrational for a defendant under these circumstances to have rejected the plea and proceeded to trial. “A mentally competent defendant ... has the constitutional right to insist on going to trial rather than pleading guilty, even if the strength of the prosecution’s evidence may make that insistence seem irrational.” Gonzalez, 722 F.3d at 132-33 (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). Accordingly, Kayode need npt go so far as demonstrating that he necessarily would have been acquitted based on his defense to the charges. See Kovacs v. United States, 744 F.3d 44, 53 (2d Cir.2014) (“[T]he question is not whether the defense would ultimately have been successful.”). Rather, he must establish that “a decision to reject the plea bargain would have been rational under the circumstances,” Padilla, 559 U.S. at 372, 130 S.Ct. 1473, and that but for counsel’s errors, there is a reasonable probability of a more favorable outcome, Strickland, 466 U.S. at 694, 104 S.Ct. 2052. Contrary to the implicit suggestions by the district court and the majority, under Strickland, Kayode need not establish that “counsel’s deficient conduct more likely than not altered the outcome of the case,” but, rather, he most demonstrate only a reasonable probability of a different outcome, “sufficient to undermine confidence in the outcome.” Id. at 693-94, 104 S.Ct. 2052.[8]
Here, taking into consideration Kayode’s strong ties to the United States — Kayode has resided in Texas for over thirty years, *738 where his young child currently lives — as well as the fact that one of the counts of conviction has been vacated on appeal because the factual basis submitted by the Government at rearraignment was insufficient to establish an element of one of the charges,[9] then if Kayode could have established that he did not knowingly commit bank fraud, he may' have been able to demonstrate that but for counsel’s deficient representation, he would have rationally rejected the plea deál and obtained a more favorable outcome. Padilla, 559 U.S. at 372, 130 S.Ct. 1473.
Based on the limited record here, it is “not at all clear that [Kayode] has not been prejudiced by counsel’s allegedly deficient performance.” See Reed, 719 F.3d at 375. Therefore, this court should reverse and remand for further proceedings, including an evidentiary hearing. See, e.g., id. at 375; Reagor, 488 F.2d at 517. Kayode, “denied an opportunity to be heard, ‘has lost something indispensable, however convincing the [Government’s] showing.’ ” See United States v. Hayman, 342 U.S. 205, 220, 72 S.Ct. 263, 96 L.Ed. 232 (1952) (quoting Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, 116, 54 S.Ct. 330, 78 L.Ed. 674 (1934)).
II. Lack of Relevance of Perfunctory Judicial Admonishments to Prejudice Inquiry
In addition to the majority’s failure to acknowledge Kayode’s right to an evidentiary hearing to develop facts to support his potentially viable claim, I respectfully disagree that the perfunctory judicial admonishment provided to Kayode moments before he entered his guilty plea could excuse or lessen the prejudice to Kayode’s defense caused by his attorney’s ineffective assistance.
Among other factors in its totality-of-the-eircumstances prejudice analysis, the majority considers the fact that moments before Kayode pleaded guilty, the judge warned him that he “may” be deported. More specifically, the district court informed Kayode and two other defendants pleading guilty alongside him that “if you are not a citizen of the United States, you need to understand that a felony conviction may lead to your deportation or exclusion from the country.” Then, directing his attention to Kayode, whom the judge noted was a naturalized citizen, the court asked if Kayode understood that, “if your citizenship is revoked you also ... that conviction may lead to your deportation or exclusion from the country?” The majority concludes that this judicial admonishment and Kayode’s affirmative response to the judge’s question as to whether Kayode understood such potential consequences, “weighs against” finding prejudice. Ante, at 728.
It may be possible that in a different kind of case, the petitioner’s receipt of a *739 judicial admonishment regarding immigration consequences mil weigh against a finding of prejudice. However, the prejudice inquiry is context- and fact-specific[10] and thus a court faced with an ineffective-assistance-of-counsel claim under Padilla should not automatically consider ’ and weigh such general, tentative judicial admonishments in every case. Applying this fact-specific analysis, I would conclude that, in this case, the judge’s tentative warning provided to Kayode at the plea colloquy does not weigh against, diminish, or excuse a finding of prejudice caused by the ineffective assistance of his counsel.
A.
Prehminarily, it is important to recognize that a Sixth Amendment claim of ineffective-assistance-of-counsel under Padilla may take a wide variety of forms. A petitioner may, like Padilla, contend that counsel provided ineffective assistance by failing to advise him regarding the adverse immigration consequences of a proposed guilty plea before entering the plea. Padilla, 559 U.S. at 369, 130 S.Ct. 1473. Alternatively, a petitioner may allege that despite his communicating to counsel that the potential for deportation was the “most important part ... of the penalty that may be imposed,” id. at 364, 130 S.Ct. 1473, counsel failed to “plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation,” id. at 373, 130 S.Ct. 1473, and, instead, encouraged the defendant to plead guilty to a charge that would result in deportation. Or a petitioner may allege that counsel provided inaccurate legal advice that encouraged the petitioner to proceed to trial, foreclosing his ability to negotiate for a plea deal that could have avoided or reduced the risk of deportation. See, e.g., Lafler v. Cooper, — U.S. -, 132 S.Ct. 1376, 1384, 182 L.Ed.2d 398 (2012) (holding that counsel who encouraged the defendant to reject a favorable plea offer and proceed to trial based on erroneous advice that the defendant “could not be convicted at trial,” provided ineffective assistance of counsel).
As noted by the majority, the Supreme Court’s Sixth Amendment jurisprudence makes clear that prejudice is a context-specific inquiry. Depending on the nature of the petitioner’s allegations, in some cases establishing prejudice may require a showing that but for counsel’s errors, the petitioner would have rejected the plea and insisted on proceeding to trial, Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) — an inquiry that “will depend in part on a prediction of what the outcome of a trial might have been,” if for example, the petitioner alleges that counsel failed to adequately investigate his case or failed to inform him of an affirmative defense. Armstead v. Scott, 37 F.3d 202, 206 (5th Cir.1994). In other cases, for example if the petitioner alleges that counsel failed to communicate a favorable plea-deal offer from the prosecution to the client, the petitioner must show that there is “a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.” Missouri v. Frye, — U.S. -, 132 S.Ct. 1399, 1409, 182 L.Ed.2d 379 (2012).
Because the prejudice inquiry itself changes depending on the contours, of the petitioner’s Sixth Amendment claim, judicial admonishments provided at the plea colloquy are not relevant to the, prejudice inquiry in every ineffective-assistance-of- *740 counsel claim in which the defendant invokes Padilla. For example, a petitioner may concede that, although he was aware of a small chance of adverse immigration consequences before he pleaded guilty, counsel was ineffective by failing to advise him of the,certain or near-certain deportation consequence of his guilty plea. In such a case, a judicial warning of possible deportation simply mirrors the bad advice of defense counsel in failing to advise him that deportation would certainly result from the guilty plea. To establish prejudice, the petitioner would have to show that had he been advised of the certain consequences of deportation, he would have rationally rejected the plea, Padilla, 559 U.S. at 372, 130 S.Ct. 1473, and that there is a reasonable probability of a different outcome, Strickland, 466 U.S. at 694, 104 S.Ct. 2052. The judicial admonishment regarding possible deportation consequences would be irrelevant because “[ejven if [the petitioner] was aware, when he pled, of the ‘possibility’ that he might incur some risk of deportation by entering a plea, this does not show that he would not have gone to trial rather than plead guilty had he been properly advised that a plea would make his deportation virtually certain.” United States v. Bonilla, 637 F.3d 980, 984 (9th Cir.2011).
Likewise, if a petitioner’s Sixth Amendment claim is that counsel was ineffective in his failure to “plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation,” Padilla, 559 U.S. at 373, 130 S.Ct. 1473, then the judge’s general admonishment provided after plea bargaining has terminated will be irrelevant in determining whether, but for counsel’s deficient representation during the plea bargaining stage, a “plea offer [that reduced the chances of deportation] would have been presented to the court[,] that the court would have accepted its terms, and that the conviction or sentence, or both, ... would have been less [likely to result in deportation] than under the judgment and sentence that in fact were imposed.” Lafler, 132 S.Ct. at 1385. In such an ineffective-assistance-of-counsel claim, the petitioner’s comprehension of the judge’s tentative warnings do not refute or shed any light on his post-conviction assertions that counsel failed to provide reasonably effective advocacy on his behalf in light of his desire to avoid deportation. Therefore, if petitioner were able to demonstrate that he was prejudiced by counsel’s failure to seek a more favorable plea bargain that actually would have been available to him, then the prejudice to his case would not and should not be excused or diminished by a judicial warning of “possible deportation.”
B.
Applying this fact-bound, context-specific analysis, I conclude that the judicial admonishment here does not and should not weigh against a finding of prejudice. Kayode avers via sworn affidavit that his defense attorney “never once” discussed with him the immigration consequence of the guilty plea nor even reviewed the contents of, or provided him an opportunity to read, the written plea agreement before coercing him to sign it and enter a guilty plea that would certainly result in his loss of citizenship. Kayode avers that he signed the plea agreement before the plea colloquy without understanding the immigration consequences of his guilty plea, and that, based on his communications with counsel, he believed that upon signing the agreement, “there was no going back” — he believed that he had irrevocably forfeited his right to trial and was bound by the agreement to enter the guilty plea. Further, no one told him that his entry of the proposed guilty plea would result in his *741 certain loss of citizenship and exposure to deportation. Even though the judge broached the subject of possible revocation of citizenship and deportation in his warning at the plea colloquy, defense counsel told Kayode that he could not change his plea because his signing of the plea agreement was irrevocable. Kayode argues that if his attorney had warned him of the consequences of his guilty plea (ie., the certain revocation of his naturalized citizenship and consequent exposure to deportation), he would have rejected the plea deal and proceeded to trial.
The judge’s tentative advisory regarding potential deportation consequences provided to Kayode mere moments before he pleaded guilty, after plea bargaining was complete, and after Kayode signed a plea agreement he thought he was bound by, does not provide us with any information as to what advice or advocacy counsel provided, or what outcome could have resulted had counsel effectively represented Kay-ode throughout the plea bargaining stage. The judge’s tentative admonishment is not inconsistent with Kayode’s assertions that prior to the plea colloquy, he was never advised by counsel of the near-certain deportation consequences of his plea and believed, based' on discussions with counsel, that he was bound by the plea agreement, which he signed in court at his counsel’s direction before the final plea proceeding. Accordingly, the judge’s warning at the plea proceeding does not make it less probable that a different outcome could have resulted if Kayode had received competent advice from his attorney and liad been afforded an effective advocate throughout the pre-plea proceedings. For these reasons, I disagree that the particular judicial admonishment here realistically brings any significant weight to bear against a finding of prejudice.
In sum, while it is possible that a judicial admonishment may be relevant to the prejudice inquiry in' a different kind of case, the weight, if any, given to the admonishment will depend upon the particular facts of the case, as well as the specific arguments raised and allegations or evidence presented by the petitioner. Here, in light of Kayode’s allegations, affidavit, and arguments, I fail to see how the judicial admonishment is inconsistent with or weighs against a finding of prejudice. Moreover, I dissent from the judgment that affirms the district court’s dismissal of Kayode’s habeas petition without an evidentiary hearing, despite a limited record that does not conclusively show that he is entitled to no relief on his Sixth Amendment claim.

. The majority suggests that by describing the judicial admonishment here as ‘'perfunctory” I erroneously characterize the district court's admonishment as nothing more than a recitation from a script. That is not so. Rather, the district court’s admonishment here, like most judicial admonishments during guilty plea proceedings, was “perfunctory” because it was part of the court’s routine duty and by its very nature, provided only a superficial warning that contained none of the meaningful advice, guidance, or counsel that a defense attorney is required to provide to his client. See Perfunctory Definition, Merriam-Webster.com, http://www.merriam-webster.com/ dictionary/perfunctory (last visited Dec. 22, 2014) (defining "perfunctory” as "characterized by routine or superficiality”); see also Perfunctory Definition, OED: Oxford English Dictionary, http://www.oed.com/view/Entry/ 140818 (last visited Dec. 22, 2014) (defining "perfunctoiy” as, inter alia, "superficial” or "done merely as a matter of duty”). A judge fulfills his duty at the guilty plea proceeding by providing a general, vague, and equivocal warning that deportation is a potential consequence of a guilty plea. See Fed.R.Crim.P. 11 advisory committee’s note (2013 Amendments, Subdivision (b)(l)(0)) (explaining that a court must provide "a generic warning, not specific advice concerning the defendant's individual situation.”). This is of course not the kind of advice and advocacy that is required of counsel under the Sixth Amendment, and thus is a "perfunctory,” or superficial warning regarding the adverse consequence of Kayode’s loss of citizenship and exposure to deportation.

. To demonstrate that the district court abused its discretion in denying a claim without an evidentiary hearing, this court has, depending on the facts and circumstances of the case, sometimes required that a petitioner present "independent indicia of the likely merit of [his] allegation.” See, e.g., United States v. Cavitt, 550 F.3d 430, 442 (5th Cir.2008). "However, this requirement must be understood practically, in the context of the claim being presented,” Reed, 719 F.3d at 373, and is inapplicable to this case.
The requirement of "independent indicia” was first articulated by the panel in United States v. Raetzsch, and is, as I see it, properly limited to cases with analogous facts; for example, where the petitioner's allegations are directly refuted by his prior testimony and "inconsistent with the bulk of his conduct to date.” 781 F.2d 1149, 1151 (5th Cir.1986). In Raetzsch, this court was faced with a claim that the petitioner’s guilty plea was involuntary because it was induced by an "unkept plea bargain,” yet this allegation directly refuted the petitioner’s testimony (albeit unsworn) at the plea hearing. Id. at 1150. The vast majority of case law that cites this proposition likewise involves cases in which the petitioner makes claims of an unkept promise that is "directly refuted” by their prior sworn testimony. See, e.g., United States v. Cervantes, 132 F.3d 1106, 1111 (5th Cir.1998) (reasoning that where petitioner’s claims of an unkept promise directly refuted her sworn testimony that she had "not been induced to sign the agreement by any promises, representations or coercion,” she may nonetheless be granted an evidentiary hearing "if [she] produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties”); see also Harmason v. Smith, 888 F.2d 1527, 1529 (5th Cir.1989) (likewise requiring "independent indicia of the likely merit of [the petitioner’s] contentions” when the petitioner’s claim was based on an alleged promise that was "inconsistent with representations made in open court”). A requirement of “independent indicia” beyond the petitioner’s sworn affidavit is thus appropriate where such allegations are otherwise negated by the record, and should not be applied across the board to every habeas petitioner's claims and particularly not here, when the pro se, indigent and incarcerated petitioner submits a sworn affidavit with detailed and specific factual allegations that are not "directly refuted” or rebutted by his prior testimony. Machibroda, 368 U.S. at 494, 82 S.Ct. 510.

. Chaidez v. United States, - U.S. -, 133 S.Ct. 1103, 1111, 185 L.Ed.2d 149 (2013) (“It was Padilla that first ... made the Strickland test operative! 1 when a criminal lawyer gives (or fails to give) advice about immigration consequences”).

. While, on this record, the contested issues of fact appear to warrant a full evidentiary *734 hearing, if remanded, the district court would have the discretion to determine whether a full evidentiary hearing with live testimony is indeed warranted, or whether some other proceeding would suffice to develop the record and resolve contested issues of fact, such as discovery proceedings or obtaining affidavits from counsel and other relevant witnesses. See, e.g., Blackledge v. Allison, 431 U.S. 63, 82-83, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (“[I]t may turn out upon remand that a full evidentiary hearing is not required. But [the petitioner] is entitled to careful consideration and plenary processing of (his claim,) including full opportunity for presentation of the relevant facts”) (internal quotation marks and footnote omitted); Friedman v. United States, 588 F.2d 1010, 1017 (5th Cir.1979) (vacating and remanding "for reconsideration of the petition after as full a hearing as is necessary to decide all of these unresolved factual allegations which, if true, might support a constitutional claim of ineffective assistance of counsel.”).

. See, e.g., McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) (acknowledging that the Supreme Court has “insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed”) (citing Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). See also Hernandez v. Thaler, 630 F.3d 420, 426 (5th Cir.2011) (“The filings of a federal habeas petitioner who is proceeding pro se are entitled to the benefit of liberal construction.”); Johnson v. Quarterman, 479 F.3d 358, 359 (5th Cir.2007) ("Briefs by pro se litigants are afforded liberal construction. ...”); Melancon v. Kaylo, 259 F.3d 401, 407 (5th Cir.2001) (reasoning that the pro se habeas petitioner’s argument that he should not be punished for the improper setting of the return date should be construed as a request for equitable tolling, despite his failure to "explicitly raise the issue of equitable tolling”).

. I will address my views on the judicial admonishment factor in section II, infra.

. Indeed, this court has recently found a reasonable probability that, absent the district court’s Rule 11 violation, the defendant would have rejected a plea deal and exercised his right to trial, despite video evidence that implicated the defendant in a drug conspiracy. See United States v. Hemphill, 748 F.3d 666, 677 (5th Cir.2014).

. “[T]he appropriate test for prejudice finds its roots in the test for materiality of exculpatory information not disclosed to the defense by the prosecution, United States v. Agurs, 427 U.S. 97, 104, 112-113, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and in the test for materiality of testimony made unavailable to the defense by Government deportation of a witness, United States v. Valenzuela-Bernal, 458 U.S. 858, 872-874, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982).” Strickland, 466 U.S. at 694, 104 S.Ct. 2052; see also id. at 703, 104 S.Ct. 2052 (Brennan, J., concurring in part and dissenting in part) ("[R]ejecting the strict 'outcome-determinative' test employed by some courts, the Court adopts as the appropriate standard for prejudice a requirement that the defendant ‘show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the pro *738 ceeding would have been different,’ defining a ‘reasonable probability’ as ‘a probability sufficient to undermine confidence in the outcome.’ ”) (citation omitted); see id. at 707, 104 S.Ct. 2052 (Justice Marshall, dissenting) ("[T]he majority holds that only an error of counsel that has sufficient impact on a trial to ‘undermine confidence in the outcome’ is grounds for overturning a conviction.”).

. Specifically, the aggravated identity theft charge which Kayode pleaded guilty to was vacated in 2010, when this court determined that (as conceded by the Government) the factual basis was insufficient to establish an essential element of the crime — that Kayode “knew the means of identification used or possessed belonged to an actual person[,]” as required for an aggravated identity theft conviction, pursuant to Flores-Figueroa v. United States, 556 U.S. 646, 129 S.Ct. 1886, 173 L.Ed.2d 853 (2009). See United States v. Kayode, 381 Fed.Appx. 323 (5th Cir.2010) (unpublished).

. See, e.g., Sears v. Upton, 561 U.S. 945, 955, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010) ("[T]he Strickland [prejudice] inquiry requires [a] probing and fact-specific analysis____”).